Milwaukee Commercial Bank, Plaintiff in Error, v. David A. Bennett and L. J. MacKinnon, Defendants in Error.

Gen. No. 32,405.

Opinion filed June 20, 1928. Rehearing denied July 7, 1928.

HOAG & ULLMANN, for plaintiff in error.

ZIMMERMAN & CLARK, for defendants in error; EDWARD A. ZIMMERMAN and ROBERT L. McDOUGAL, of counsel.

MR. JUSTICE WILSON delivered the opinion of the court.

From the facts in this case it appears that the plaintiff, Milwaukee Commercial Bank, a Wisconsin banking corporation, was the owner and holder of a certain note dated at Milwaukee, Wisconsin, October 11, 1920, and signed by the Great Lakes Chemical Works, by D. A. Bennett, president, and L. J. MacKinnon, vice president. The note was for $25,000 and was payable ninety days after date. This note was indorsed by D. A. Bennett and L. J. MacKinnon, defendants, and was given to secure a loan from the bank to the Great Lakes Chemical Works.

The action appears to be based upon an amended declaration, consisting of three counts. The first count charges that the defendants made false representations in and about the securing of the loan; the second count, based upon the same facts as are contained in the first count, seeks to recover in trover, and the third count is one for deceit.

From the facts it appears that one Alfred Kay, was a lawyer and a banker and, in October of 1920, was president of the Milwaukee Commercial Bank, and, as such, had charge and supervision of the loans made by that institution; that he met Bennett at the bank and a loan to the Aromatic Products Company was discussed. That later, during the month of October, he met MacKinnon and Bennett, at which time Bennett expressed the desire that the bank make a loan of $25,000 to the Great Lakes Chemical Works, of which Bennett was president. In this conversation it appears that Bennett made certain statements in regard to the future of that institution; that among other things he stated he had a man who was desirous of putting some money into the plant, but was in need of immediate additional capital to the extent of $25,000 for the purpose of buying material for the plant; that Kay stated it would be necessary that a note should

be put up as collateral, properly indorsed by others and, thereupon, MacKinnon and Bennett agreed to indorse the note.

That in addition to the collateral note, plaintiff in error received 775 shares of Aromatic Chemical Works and certain warehouse receipts. It appears further from the testimony of Kay that at this time he was told by the defendants in error that this stock, put up as collateral security, was worth about $20,000; that the Great Lakes Chemical Works was to take over the Aromatic Products Company. Kay further testified that Bennett told him that the plant of the Great Lakes Chemical Works was paid for and fully equipped and that they were ready to manufacture. He testified further that he received a statement of the Bennett & Davis Company, the Bennett in said company being one of the defendants in error herein, and received a report from one Fredrick F. Lewis in regard to the Bennett & Davis Company and took the matter up with Mr. Gates of the First National Bank of Wauwatosa, and received reports from Dun & Bradstreet and that these documents were submitted to the board of directors of his company, the Milwaukee Commercial Bank, together with the facts which he had learned from Bennett, and, thereupon, the board of directors acted favorably upon the loan.

Kay testified further that, on the evening of the 9th of December, 1920, he had another talk with Bennett at the bank and stated to Bennett that he had been down to the Great Lakes Chemical Works and had ascertained that the representations made by him and MacKinnon concerning that plant were not true. That they did not have a plant in operation; that they did not have the machinery with which to operate; that they did not own the plant and the bank had not received the money from the warehouse receipts. That, thereupon, Bennett stated that he wanted an additional $25,000, and stated that he, Bennett, had an

interest in the Bennett & Davis Company and that it consisted of a one-half interest in the Delphi Products Company; that his one-half interest was worth $25,000.

Thereupon a new note was executed by Mr. Bennett, in the sum of $25,000 and Bennett agreed to deposit his stock of the Bennett & Davis Company as collateral and as additional security. It appears from the facts that this stock was, at the time, in the custody of the alien property custodian and was not delivered. Subsequently, in January of 1921, Bennett & Davis, a corporation, went into bankruptcy, and scheduled the debt of the Milwaukee Commercial Bank.

Upon the trial of this cause before a jury, a verdict was returned finding the issues for the defendant and judgment was entered upon this verdict and this judgment we are asked to reverse on appeal.

To the declaration, pleas of the general issue were filed and also a plea of the statute of limitations. The amended declaration filed in said cause appears from the record to have been filed October 31, 1925, more than five years after the alleged transaction upon which the action is based. The record contains no copy of the original declaration filed in said suit, so that it is impossible of ascertainment as to whether or not the facts set up in the amended declaration were consistent with those set forth in the original declaration. The trial court had the advantage of seeing and considering both. In other words, this court is unable to ascertain from the original declaration as to whether or not a new cause of action is set forth in the amended declaration. When an amended declaration is filed, after the statute has run, the court reverts to the original declaration to see whether or not it is the same cause of action differently stated. *Reell v. Petritz*, 224 Ill. App. 65.

The facts in this case disclose that the alleged fraud was perpetrated October 11, 1920. The amended dec-

laration was filed October 31, 1925, more than five years after the alleged fraud. There was no replication filed to the plea of the statute of limitations, setting up the fact that the fraud was concealed, so that there was presented no excuse of tolling the statute of limitations. The Supreme Court of this State in the case of *Keithley v. Mutual Life Ins. Co.*, 271 Ill. 584, in its opinion says:

"The language of the statute is positive in its requirement that all civil actions not otherwise provided for (among which this is included) shall be commenced within five years after the cause of action accrued."

There is no exception of causes of action originating in fraud. The Supreme Court again in its opinion says:

"The doctrine announced in these decisions is, that the fraudulent concealment of a cause of action which will prevent the running of the Statute of Limitations must be some affirmative act or representation intended to prevent the discovery of the cause of action, which does actually prevent such discovery; that a replication setting up such fraudulent concealment must set out the facts constituting the concealment; * * * that the rule that the statute begins to run only from the discovery of the fraud does not apply when the party affected by the fraud might with ordinary diligence have discovered it."

That the plaintiff might have, with ordinary diligence, discovered the fraud concerning the plant and its equipment and its condition, is evidenced by the fact that it was discovered within a short time thereafter and before the making of the second agreement. What was done at that time by the plaintiff might easily have been done before the loan was made.

There being no means of comparison, this court must grant the trial court every indulgence to sustain its judgment.

This court will not go to the record except to sustain, but an examination, for that purpose, of the certificate of the trial court approving the bill of exceptions, fails utterly to show that the bill of exceptions contains all the evidence heard upon the trial. Where there is no such statement in the certification, this court can only presume that there was sufficient evidence to warrant and sustain the findings of the trial court. *Bedinger v. May,* 323 Ill. 187. An examination of the common-law record shows no motion of the trial court or order directing a verdict, nor exception thereto, but an effort has been made to preserve the fact that the court directed a verdict in the bill of exception. The judgment order contained in the common-law record does not show a directed verdict but, on the other hand, a reading of that order indicates that the cause had been submitted upon the evidence to the consideration of the jury. We are not passing upon that question in this case and refer to it only for the purpose of calling attention to the fact that the record is irregular in a number of respects.

It is a well settled principle of law that one who finds that he has been defrauded must, after the discovery of the fraud and at the earliest opportunity, ask to have the transaction rescinded and the parties placed *in statu quo. Resser v. Corwin,* 72 Ill. App. 625; *Cox v. Montgomery,* 36 Ill. 396.

Aside from the question of the statute of limitations, it is apparent from the record that the original fraud, if there was any fraud, took place at the transaction in October, 1920. Suit was not started until July 30, 1925, and, as it has already been stated, the amended declaration, on which this suit is predicated, was filed October 31, 1925.

From an examination of the testimony and, in view of the fact that, with full knowledge of the facts concerning the original transaction, plaintiff again, in

December, 1920, entered into negotiations with the defendant as a result of which additional collateral security was put up by the defendants, we can take no other view of the situation than that it was, in fact, a waiver of their rights under the original transaction, if any rights there were. Not only did the plaintiff fail to rescind the original transaction after the discovery of the alleged fraud, but it proceeded with the transaction with full knowledge of all that had transpired and with full knowledge of all the facts and circumstances surrounding the original transaction. *Donian v. Fox,* 170 Ill. App. 41.

Moreover, it appears from the testimony that the plaintiff did not entirely rely upon the representations, as made, but secured reports from Dun & Bradstreet, and other sources of information, prior to the making of the loan, and it would be hard to say whether the reliance was placed upon these reports or upon the words and statements of the defendants. This fact alone might not, necessarily, preclude a recovery, but would carry weight upon a consideration of the question as to whether or not plaintiff was induced to make said loan by reason of the representations or by reason of the disinterested statements.

Upon the pleadings and the facts as we find them in the record, the cause of action was barred by the statute of limitations. From the certificate of the trial court, certifying the bill of exceptions, we are unable to say that all of the evidence heard upon the trial is before us for consideration and, for that reason, it becomes our duty to indulge every presumption in favor of the finding of that court and, therefore, the judgment should be affirmed.

For the further reason the judgment should be affirmed because we find from the testimony that, after a full knowledge of the alleged fraud, plaintiff concluded another and different arrangement by the ac-

ceptance of other and different collateral and cannot, therefore, be heard to insist upon the original fraud. It had a right of action, but did not exercise it, but instead continued to deal with the defendants under further and different arrangements with full knowledge of the facts.

For the reasons stated in this opinion the judgment of the superior court is affirmed.

*Judgment affirmed.*

HOLDOM, P. J., and TAYLOR, J., concur.