Western-United Dairy Company and Milk Wagon Drivers' Union of Chicago, Local 753, Appellees, v. Ike Nash, Appellant.

Gen. No. 39,929.

 

Opinion filed December 30, 1937.

SUMNER C. PALMER, of Chicago, for appellant.

DAVID A. RISKIND and ROBERT MENDELSON, of Chicago, for appellees.

MR. JUSTICE MATCHETT delivered the opinion of the court.

Upon the filing of a bill of complaint by the dairy company and Chicago Local 753 of the Milk Drivers' Union on July 19, 1937, upon due notice, the court entered a temporary injunction against defendant, Ike Nash, restraining him from soliciting the business of 120 customers of the dairy company, whose names are in the bill and set up in the order. The complaint, consisting of 20 paragraphs with prayers for an injunction and further relief, is verified by M. S. Dick, president of the dairy company, and Steve C. Sumner, secretary-treasurer of the local union. Defendant has not in any way denied the facts averred in the bill. The order for an injunction provided that each of plaintiffs should give bond in the sum of $750, which was done, and the respective bonds were duly approved by the court. September 23, 1937, defendant

moved that the injunction be dissolved and the complaint stricken. On October 28 thereafter the motions were denied, and defendant has appealed.

The dairy company is a duly organized corporation. The union is a voluntary association consisting of about 7,300 persons who serve milk companies operating in the Chicago area as drivers of milk wagons. Defendant contends that only one bond should have been given instead of two, and that the condition of both bonds was insufficient. We are not able to see how the defendant was injured in any way by the fact that two bonds were executed in his favor. Nor has he pointed out wherein the condition of either bond is defective. If the bonds are defective in any way, this might be ground in the trial court for a rule on plaintiffs to file a new bond, to file new bonds, or one joint bond, but is not sufficient reason for reversing the order.

Defendant contends that there is a misjoinder of parties, but this (if true) is not a valid reason for reversing. (See Ill. Civil Practice Act Annotated, McCaskill's 1936 Edition, sec. 26, p. 60.) Defendant urges that a voluntary unincorporated association has no standing to maintain a suit at law or in equity. That is not the law in this State. *Cahill v. Plumbers, Gas & Steam Fitters' & Helpers' Local 93,* 238 Ill. App. 123; *Biller v. Egan,* 290 Ill. App. 219. Even if this were true it would not justify the reversal of an order not erroneous in so far as the dairy company is concerned. It is urged that certain parts of the complaint should be stricken because of the absence of allegations of fact supposed to be necessary. Plaintiffs were not required to plead their evidence and an examination of the complaint shows that it is not substantially defective in these respects. It is urged that the complaint should have been stricken because it discloses that plaintiffs are in court with unclean hands

by reason of a provision in the contract between the dairy company and the union set up verbatim in the bill, which provides that the union shall not be required to pay costs of any order which may restrain a driver from "stripping his route," and that the dairy company shall advance all necessary costs for enforcing this provision. It is suggested that this amounts to maintenance. We hold the maintenance statute is not applicable to a situation of the kind set up in the contract. Ill. Rev. Stat. 1937, ch. 38, § 66; Jones Ill. Stats. Ann. 37.041. The facts set up in the bill which affect the real merits of the controversy appear to be as follows: Beginning on the second day of May, 1923, and ending on July 10, 1937, Nash was employed by the plaintiff as a milk wagon driver, and during that time called upon and served customers and consumers of the dairy company. A list of the customers he served is attached to the complaint as Schedule "C." On or about July 15, 1923, Nash became a member of the union, and when the dairy company employed Nash he agreed to be governed and to act in accordance with all of the by-laws, rules and agreements entered into by a majority of the members of the union. On the first of May, 1937, an agreement was entered into between the members of the union and plaintiff dairy company, a copy of which is attached to the bill and marked Exhibit "A." By that contract it was agreed Nash would not, while in the employ of the plaintiff dairy company nor within 24 months after the termination of his services, call upon, solicit or interfere with or divert the customers and consumers which he formerly served while in the employ of the dairy company, that Nash agreed to be governed by all agreements then existing between the dairy company and the union of which he was a member, and any agreements which should thereafter be made. Nash was discharged July 10, 1937, while the

contract in question was in force. A by-law of the union passed September 10, 1916, by the members of the union and in force when Nash was discharged provides:

"The customers and consumers of the dairy companies employing Union labor belong to and are a part of the assets and good-will of the said dairy companies; that any milk wagon driver, a member of this Milk Wagon Drivers' Union of Chicago, Local 753, solicits, serves and sells such customers and consumers in a representative capacity only, and if for any reason whatsoever any member of the said Union terminates his employment, or is discharged, or dismissed, or for any other reason said employment ceases and is terminated, it is understood and agreed that any such member shall not call upon, solicit, sell or interfere with or divert the customers and consumers, formerly served by them on behalf of their former employer for a period of two (2) years from the date of the termination of their employment.

"It is further understood that if a member of the said Union were to resign as a member of the said Union, in no event would this abrogate the agreement into which he entered until the space of two (2) years from the date of his designation or discharge had elapsed."

The complaint avers that defendant Nash with full knowledge of this agreement is violating it and since June 27, 1937, has persisted in soliciting the customers and consumers of the dairy company and attempted to sell them dairy products produced by firms other than Western-United Dairy Company; that the plaintiffs have repeatedly requested and demanded that he cease his activities, but he has refused to do so. The complaint alleges that unless Nash is restrained the dairy company will suffer irreparable injury for which there is no adequate remedy at law, and that the acts of Nash have aroused among the members of the union

internal dissension and quarrels with the plaintiff dairy company and other dairy companies similarly situated; that the union has been injured because of these violations, and that unless Nash is enjoined he will continue to cause dissension among the members of the union; that by reason thereof the union is threatened with destruction and ruin, for which it has no adequate remedy at law.

In *American Cleaners & Dyers v. Foreman,* 252 Ill. App. 122, this court gave consideration to the question of the right of an employer to enjoin a former employee from soliciting his old customers, and after a review of the authorities held that in the absence of an express contract, equity would not enjoin an employee after the termination of his employment from dealing with old customers, soliciting new ones, or from soliciting business from the customers of his former employer, where no list of names was taken when he left the employment and no fraud was committed. While there is a conflict of authority, the rule announced in that case is supported by well considered decisions of other jurisdictions. *Witkop & Holmes Co. v. Boyce,* 112 N. Y. Supp. 874; *Empire Steam Laundry v. Lozier,* 165 Cal. 95; *Messinger Pub. Co. v. Mokstad,* 257 Ill. App. 161. These authorities also hold that where by contract the employee has promised that he will not make such solicitation during a reasonable time, such provision will be enforced by a court of equity. The fact that defendant was a member of the union, that he knew the terms of its by-laws and the provisions of the contract of the union with the plaintiff dairy company is not denied. In Corpus Juris, vol. 63, p. 692, sec. 62, the author states the rights and liabilities of members of a trade union in general to be as follows:

"On joining a labor union the constitution and by-laws become a part of the member's contract of membership, under which he agrees to become bound by the

constitution and governing rules of the union so far as is not inconsistent with controlling principles of law. The constitution and by-laws of an unincorporated trade union express the terms of a contract, which define the privileges and rights secured to, and duties assumed by, those who have become members. The agreement of a member on joining a union to abide by its laws and comply with the will of the lawfully constituted majority does not require a member to submit to the determination of the union any question involving his personal rights.''

Under the facts as stated in the complaint (which as already stated) are not denied, we hold the defendant was obligated to refrain from soliciting the former customers of his employer; that he was violating his obligations in that regard; and that the order for a temporary injunction was not erroneous. The order will therefore be affirmed.

*Affirmed.*

O'Connor, P. J., and McSurely, J., concur.