Florence Aaron, Plaintiff, v. Mary Dausch et al., Defendants.
Mary Dausch, Cross Plaintiff and Appellant, v. Florence Aaron et al., Cross Defendant and Appellees.

Gen. No. 41,674.

Opinion filed March 18, 1942.

JOHN A. COOKE and IRVING G. ZAZOVE, both of Chicago, for appellant.

ARTHUR J. GOLDBERG, of Chicago, for certain appellee.

IRA S. KOLB, of Chicago, for certain other appellee.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS and A. EDMUND PETERSON, all of Chicago, for certain other appellee; ANDREW C. HAMILTON and A. EDMUND PETERSON, both of Chicago, of counsel.

BENJAMIN ROBERT COHEN, of Chicago, for certain other appellees; SAUL H. FRIEDMAN, of Chicago, of counsel.

TANNENBAUM, POLIKOFF & SCHMIDT, of Chicago, for certain other appellees; JULIUS A. POLIKOFF, of Chicago, of counsel.

HIRSCH E. SOBLE, of Chicago, for certain other appellees.

NATHAN SCHWARTZ and KARGMAN & KARGMAN, all of Chicago, for certain other appellees.

Mr. Justice Hebel delivered the opinion of the court.

This is an appeal by the cross plaintiff from an order of the superior court entered December 3, 1940, striking cross plaintiff's second amended counter claim and dismissing cross plaintiff's action, and for costs against cross plaintiff in favor of each of the cross defendants who are appellees here.

On May 7, 1940, a complaint was filed by Florence Aaron to foreclose a trust deed dated October 8, 1930, conveying certain real estate to Chicago Title & Trust Company to secure an indebtedness of Mary Dausch, in the sum of $8,500. Mary Dausch, a defendant, filed her appearance and answer, with a counterclaim. Her answer and counterclaim were stricken on motion and an amended answer was filed July 9, 1940. Her amended counterclaim was filed July 27, 1940. On September 17, 1940, Mary Dausch was granted leave to make additional defendants to the counterclaim, and for summons to issue and leave was also granted to file her second amended counterclaim.

The second amended counterclaim alleged in substance that Harry A. Lipsky, Seymour W. Schiff, Barney Linenthal, Barnett Faroll Isadore Ossey, Benjamin J. Schiff, Jacob Glassman, A. Oswianza, I. B. Ury, George Skurow, and S. Jesmer, acting as a bondholders' committee, were stockholders, officers, and employees of Schiff Trust & Savings Bank, in August 1928, and that said bank made real estate loans in Chicago, secured by first and second mortgages, in which said bank was named as trustee; that on or about August 14, 1928, Mary Dausch, a widow, obtained a loan from said Schiff Trust & Savings Bank and executed a trust deed conveying premises then owned by her and located at 651-55 Melrose avenue, Chicago, to said bank as trustee to secure the payment of a large number of notes executed by her at the request of the agents and employees of said bank; that there was a

fiduciary relation existing between her and said bank and she had implicit faith and trust in all the bank's employees, and signed all documents, trust deeds or mortgages necessary to finance the building owned by her. It was alleged that said bank sold real estate gold bonds on a large number of buildings including that owned by cross plaintiff and retained a list of the owners of the bonds sold by the said bank; and that thereafter the bank closed in the latter part of 1929, and immediately thereafter the heretofore mentioned persons designated bondholder's committee, former officers and employees of the bank, devised and conceived a scheme to obtain large fees through wholesale foreclosures, and to obtain title to the real estate upon which said bank had made loans. This second amended counterclaim charges a large number of acts to have been done in furtherance of the alleged scheme to obtain title to properties and to deprive the bondholders of the value of their bonds.

The cross plaintiff in effect charges in her second amended counterclaim that she, as owner of the property in question, having faith and confidence in the officers and employees of the Schiff Trust and Savings Bank, accepted their offer to act as her fiduciary in financing her building in 1928; that the bank officers undertook to issue and sell real estate bonds on her building, and the bank became trustee in the trust deed given to secure their payment; that before default the bank was trustee for her, and, therefore, a confidential relationship existed; that she was ready, willing and able to meet her payments; that the bank failed in 1929, and the Schiff bondholders' committee was organized to create defaults and bring about foreclosures so that the individual members and their affiliates could buy up bonds at a discount, squeeze out nondepositors, buy in the property cheap, and by getting the title of the equity owner, could purchase at a noncompetitive bid; that they organized a side com-

pany to represent owners, and other affiliates to manage properties foreclosed by them, and operated a sort of "shell game" on bondholders and equity owners, through friendly attorneys of their selection, so that they could discourage bondholders and owners through prolonged and confused litigation in which "they held the reins of each adversary's chariot in the sham battle for fees and for the income and property."

The cross plaintiff charges that cross defendants not only conspired to, but did carry out their plans and scheme to deprive her of her property; that they did it by pretending to act for her; that they had a bondholder file a foreclosure suit on a first mortgage bond; that they had cross plaintiff, an old woman of sixty-eight years of age, placed in possession and management of the property; that they advised her to use the funds to buy up bonds; that they pretended to assist her, but bought up bonds at a low price and sold them to her at a high price; that she was thereby led by them to place herself in a position where she could not meet her interest and principal payments; that they did it to cause her to create a default so they could declare a default and accelerate the maturity of the issue; that the Chicago Title and Trust Company, and the various attorneys who represented cross plaintiff, aided and abetted the cross defendants connected with the Schiff bondholders' committee and its affiliates to carry out the scheme, and thereby became parties to the fraud and conspiracy; that various steps were taken in the perpetration of the fraud, which included the foreclosure of a second mortgage, while the first mortgage foreclosure was pending in another court, so as to squeeze out the cross plaintiff's equity of redemption before a sale was made on the first mortgage foreclosure; that by such means a sale of $20,000 was voluntarily set aside, another for $18,000 was voluntarily set aside, and a final sale was

approved to a nominee of the committee for $13,500, after a long delay, which caused interest to accumulate, and fees to multiply, resulting in a very large deficiency decree against cross plaintiff, all because she refused to accept their offer to purge her of a trumped up charge of contempt, and to give her two years' free rent for a quitclaim deed.

Cross plaintiff contends that if her second amended counterclaim is insufficient because the allegations are vague, indefinite and uncertain—as contended by cross defendants—then the court should have permitted a further amendment to supply the particulars required. The cross defendants, who filed motions to strike, contend that the second amended counterclaim is insufficient in law to state a cause of action; is vague, indefinite and uncertain; that it seeks to collaterally attack foreclosure decrees, and that no proper measure of damages is alleged.

Cross plaintiff's theory is that the cross defendants have entered into a conspiracy to cheat and defraud her, and that, if the allegations sustain the charge, either by facts directly alleged or by circumstances and the inferences reasonably deducible therefrom, then the court erred in striking the counterclaim, dismissing the case and rendering judgment against the cross plaintiff. The law in this State is that a conspiracy between defendants to defraud a person of her real estate may be proven by facts and circumstances surrounding the parties at the time of the transaction, and that all persons who aid or advise in the commission of a fraudulent act by another, or who approve of it after it is done for their benefit are liable in the same manner as they would be had they themselves performed the same act. *Miller v. John,* 208 Ill. 173.

One of the questions called to the attention of this court is that it was argued in the trial court that the counterclaim should be dismissed because it could

not be properly filed in the foreclosure suit. It would appear that section 38 of the Civil Practice Act [Jones Ill. Stats. Ann. 104.038] clearly permits the filing of such a counterclaim in a suit to foreclose a mortgage, as was held in *State Bank of St. Charles v. Burr*, 372 Ill. 114. In that case the Supreme Court held that a judgment obtained by the defendant mortgagor on a counterclaim filed in a foreclosure suit may, in the foreclosure decree, be set off against the mortgage indebtedness, and such action does not amount to the entry of an unconditional personal decree against the mortgagor before sale. Therefore, under this decision, the cross plaintiff seems to be supported in her contention that she may recover any amount established by the evidence under her counterclaim in this action which may be due her on the facts alleged.

Cross defendants in their motions to strike seek to apply to the counterclaim the common law test of sufficiency. Cross plaintiff cites *Anderson v. Biesman & Carrick Co.*, 287 Ill. App. 507, and point out that in that case the court said that there has been a steady effort in this State to get away from the so-called technicalities of common-law pleading. The conclusion argued for by cross plaintiff is that her counterclaim should be tested not by the technical rules applied under the common law but by the inquiry as to whether or not the direct allegations of fact pertaining to her cause of action are such that the law infers the legal conclusion from such direct statements.

It is urged by the motions to strike the counterclaim, that certain allegations are not sufficiently specific to inform the cross defendants of the nature of the wrongs charged against them. The counter plaintiff suggests that this proposition is answered by the courts wherein they say that it is not necessary to allege evidence and that the pleading of ultimate facts is all that is necessary, citing *Western-United Dairy*

*Co. v. Nash,* 293 Ill. App. 162, and *Carlton v. Smith,* 285 Ill. App. 380.

When we come to consider these motions to strike we must consider them the same as a demurrer prior to the Civil Practice Act. Under the Civil Practice Act a motion to strike serves the purposes of a special demurrer and all facts well pleaded are taken as admitted to be true. (*New York Life Ins. Co. v. Schlieper,* 284 Ill. App. 411.) As we understand it, the law by which we are to be governed in the instant case is that the general demurrer has been abolished and a general motion to dismiss because of failure to state a cause of action is not sufficient. As authority for this proposition, the case of *Anderson v. Olsen,* 293 Ill. App. 637 (Abst.), has been cited. We have examined the record for the purpose of determining whether the several motions of defendants set forth the several grounds upon which they seek to dismiss the second amended counterclaim, and are of the opinion that the court acted properly in determining the questions such as were called to the court's attention by these several motions.

There seems to be a further question that was before the court and that is whether a fiduciary relationship is created when one becomes a trustee in a trust deed. In determining whether such facts are alleged to show a fiduciary relationship, it is necessary to consider what situation creates a fiduciary relationship. In the first place the trustee named in a trust deed acts for both the mortgagor and the bondholders, and until default it is the trustee for the mortgagor. From an examination of the counterclaim we find the allegations that in August 1928, some of the cross defendants named were stockholders, employees, officers and directors in charge of the supervision and management of the Schiff Trust & Savings Bank; that the bank was then in the business of making real estate loans secured by trust deeds on property, in which

trust deeds the said Bank was named as Trustee; and that on August 14, 1928, cross plaintiff negotiated a loan through said bank, and signed and executed a trust deed conveying her premises as indicated in this opinion to said bank as trustee to secure the payment of certain notes or bonds executed by her at the request of the bank, its agents and employees. It is contended by counter plaintiff that those allegations are direct and of sufficient nature under the law to create a fiduciary relationship, because until default the bank, acting through its officers, which is named as trustee in the trust deed, was the trustee for the mortgagor who is the cross plaintiff in this case. Cross plaintiff in her counterclaim repeatedly alleged the motives and purposes with which various acts, otherwise lawful, were done. Such allegations would seem to be only conclusions, and subject to condemnation by the general rule that a mere averment that an act was done with a certain purpose or intent, without a statement of the facts showing such purpose or intent, is a conclusion of law. It is essential that the facts and circumstances, which constitute the alleged fraud, collusion or conspiracy, should be set out clearly, concisely, and with sufficient particularity to apprise the opposite party of what he is called upon to answer. (*Felt v. United States Mortgage & Trust Co.*, 231 Ill. App. 110.) Our attention has been called to *Dean v. Kirkland*, 301 Ill. App. 495, where this court said:

"It is well established, however, that 'Bad motive, by itself, then, is no tort. Malicious motives make a bad act worse, but they cannot make that a wrong which in its own essence is lawful. An act which does not amount to a legal injury cannot be actionable because it is done with a bad intent. Where one exercises a legal right only, the motive which actuates him is immaterial'." We are of the opinion that cross plaintiff comes within this rule and that her allega-

tions should set up facts justifying the conclusion of fraud and conspiracy for which she contends. (*Doose v. Doose,* 300 Ill. 134.)

With reference to cross plaintiff's contention that she has sufficiently alleged a fiduciary relationship between the Schiff bank and its employees to her, it appears, as stated in this opinion, that her allegations are that at the time of the execution of the trust deed, there was a fiduciary relationship existing, and that she had faith and trust in all of the bank's employees. The mere allegation of the existence of a fiduciary relationship has been expressly held to constitute a mere conclusion, and a mere assertion of faith and trust in numerous persons is insufficient. However, even if the allegation were sufficient, the existence of a fiduciary relationship at the time of the execution of the trust deed, does not imply a continuance thereof after the bank closed in 1929, and after she defaulted, and after Chicago Title & Trust Company became successor trustee in 1933.

Counter plaintiff alleged in her counterclaim that when she was served with summons in the first mortgage foreclosure, she was instructed by cross defendants to employ counsel, and that she did employ Lavin, who on April 14, 1933, filed her answer. He remained her attorney until October 4, 1939. Contrary to her brief, she does not allege that these or the other cross defendants had anything to do with her choice of Lavin or that they even knew Lavin at that time. She makes no charge that Lavin was disloyal to her, until November 1938, when, she alleged, he was allowed a fee by the court without opposition. Having had her own attorney, if she depended on cross defendants and took their advice for this intervening five-year period, she is not in a very good position to complain of her own so-called imprudence. She further alleges that the misconduct of cross defendants placed her in a position where she was unable to meet her obligations, but no

facts are alleged or stated. If the payment of $1,000 to purge herself of contempt, and the voluntary turning over of some bonds (the amount of which is not alleged), and the payment of some attorney's fees and printing bills (the amounts of which are not alleged) reduced her to a position of default, then she was never in any other position. It appears from the record that she failed to allege the amount of the first mortgage, or of the amount due thereon, although said amounts ran into large figures. She alleged that she was ready, able and willing to meet her obligations, but failed to allege what they were, or that she ever made a tender. She alleged that although she "continued to make her payments to the cross-defendants, she was served with a summons." What payments? When? Did she instruct her own counsel Lavin to defend the first mortgage foreclosure on the ground of payment? She did not so allege, and the decree in that cause on May 10, 1934, must have then found her in default.

It appears that a number of cross plaintiff's contentions regarding alleged "deceitful practices indulged in by cross-defendants to defraud cross-plaintiff of her property" are not alleged in her counterclaim as itemized in her brief, or are not alleged with sufficient facts and particularity to justify or necessitate the cross defendants meeting the issue by evidence on those questions. It does appear that she makes the sweeping allegation that the alleged acts of any one or more of the cross defendants were all done with the "acquiescence and approval" of each and all the cross defendants, hoping thereby to include them all in the alleged conspiracy, but the mere knowledge, acquiescence, or approval, without intentional participation, is not enough to constitute one a party to a conspiracy. (*Tribune Co. v. Thompson,* 342 Ill. 503.) Nowhere does cross plaintiff allege the amount of the bonds that the committee really represented. In order for them to have had an effective voice in her property

affairs, they should have represented at least a majority of the bondholders. As suggested by cross defendants, she made no allegation in that regard, probably knowing the actual fact.

Under the well-established rule that decrees and orders import verity, it is our opinion that, so long as the decrees and orders in the prior cases stand, cross plaintiff cannot be permitted to recover for the alleged conspiracy, the purpose of which according to her charge, was to bring about the entry of said decrees and orders. (*Keithley v. Stevens*, 238 Ill. 199; *Duffy v. Frankenberg*, 144 Ill. App. 103.)

Furthermore, the superior court has no authority to exercise a revisory jurisdiction over the decree or orders of the circuit or federal courts (*Simmons v. Hefter*, 308 Ill. 292), and that is in effect what cross plaintiff was asking it to do in the instant case.

Although cross plaintiff, according to her own allegation, realized on October 19, 1938, that she had been imposed upon and that the cross defendants were all engaged in an effort to obtain the property, she not only did nothing about it, but she continued to deal with said parties. Most of the things complained of, allegedly occurred after said date. Under such circumstances, it would appear that she has waived any such claims as she now seeks to assert. Until October 19, 1938, she was in possession of the property and apparently satisfied. On that date, however, a receiver was put in and she was removed, two days after she had paid over $1,000 to purge herself of contempt of court. It appears from the briefs of cross defendants that in the light of those alleged matters, the same prudence that inspired her to do something now, should have impelled her to do something on, or within a reasonable time after, October 19, 1938. The law required her to apply to the courts for relief at the earliest opportunity after the discovery of the alleged fraud. She not only did not do so, but continued to

deal with the parties who to her own knowledge were allegedly trying to defraud her. Under the circumstances, she will be deemed to have been at fault herself and to have waived any such claims as she now seeks to assert. (*Milwaukee Commercial Bank v. Bennett,* 249 Ill. App. 456; *Rogers v. Higgins,* 57 Ill. 244; *Knaus v. Chicago Title & Trust Co.,* 365 Ill. 588.)

It is urged that the cross plaintiff cannot now complain of the contempt proceeding. She did not allege what the contempt petition alleged against her, or what her defense thereto was. She alleged by way of conclusion, that the cross defendants knew that she was not in contempt of court. She further alleged that she was ''instructed to go out and borrow money to purge herself of the contempt by raising $1,000 'which money was used by her in managing the building', and on October 17, 1938, she did pay over the sum of $1,000 as of her requested in an effort to purge herself of contempt of court.'' She does not allege to whom she paid the money. It is not clear what is meant by ''which money was used by her in managing the building,'' unless perchance she meant that she was accused of misappropriating $1,000, and that she actually used it in managing the building. She failed to allege, in addition to malice, a successful termination of the contempt proceeding suit in her favor and want of probable cause, both necessary for a cause of action for malicious prosecution. The allegation of the foregoing $1,000 payment is, itself, evidence of probable cause for the contempt proceeding. (*Schwartz v. Schwartz,* 366 Ill. 247.) It appears that she did not attempt to state any facts which would justify her in making this a part of her record.

There is a charge of fraud made against Wool and Seymour Schiff in connection with the alleged sale of the bonds to her. Cross defendants suggest that this charge is entirely insufficient, and is not a proper counterclaim here. When we come to examine the al-

legations in this regard, we find that they are nothing but conclusions. (*Doose v. Doose,* 300 Ill. 134.) She should have known and alleged specific facts, figures, and dates. She does not allege that she relied and acted upon the alleged misrepresentations. She was represented by Lavin, and presumably relied upon him, since there is no allegation that he was disloyal then. Her charge was so vague and indefinite that Wool and Seymour Schiff could not be apprised of the nature of the claim which they were called upon to meet. Furthermore, in our opinion it is not the proper subject matter of counterclaim, because neither Wool nor Seymour Schiff were parties to the complaint filed herein. (*Countiss v. Whiting,* 306 Ill. App. 548; section 38 (1) Civil Practice Act [Jones Ill. Stats. Ann. 104.038].) The charges of fraud and conspiracy against Lavin and Devoe are likewise insufficient if taken without the conclusions alleged. They are not specifically charged with intentional participation in the alleged conspiracy, except perhaps by way of conclusion, and even then they are sometimes charged with intent and neglect in the same statement. Likewise, the claim against them is not the proper subject matter of counterclaim in this case. (*Countiss v. Whiting, supra.*)

Cross plaintiff sought leave to file a third amended counterclaim, which the court denied. A party is not entitled as of right to file an amended pleading, and a party so desiring should prepare and submit such proposed amendment to the inspection of the court. It is not error to refuse to allow an amendment which is not presented and where there are no means of determining whether the amendment will be a proper and sufficient one or not. (*Dilcher v. Schorik,* 207 Ill. 528; *Dean v. Kirkland,* 301 Ill. App. 495.) By an order of court, cross plaintiff was ruled to, and did, swear to her second amended counterclaim. In the case of sworn pleadings, greater caution has always been exercised by our courts, and the rule stated above

has been more stringently enforced. As suggested by cross defendants, there is no hardship in requiring a party who has already had three opportunities to place on file a proper pleading, and who is invoking the discretion of the court, to present with her application for leave the amendments proposed to be made, or otherwise apprise the court of what they are, so that the court may intelligently determine the propriety of allowing or disallowing them.

For the reasons stated in this opinion, the judgment of the superior court is affirmed.

*Judgment affirmed.*

BURKE, P. J., and KILEY, J., concur.