### E. J. ALBRECHT CO. v. NEW AMSTERDAM CASUALTY CO. et al.

#### No. 9210.

Circuit Court of Appeals, Seventh Circuit.

July 3, 1947.

Rehearing Denied Aug. 18, 1947.

A. R. Peterson, Owen Rall and John R. Porter, all of Chicago, Ill., for appellant.

Hirsh E. Soble, of Chicago, Ill., for appellee.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff brought an action for damages against New Amsterdam Casualty Company alleging breach of a construction sub-contract between plaintiff and William Dushney. The complaint was filed against New Amsterdam, because, as surety, it had executed a bond running to plaintiff, with Dushney as principal, for the faithful performance of the sub-contract. Dushney (also referred to as defendant and counterclaimant) thereupon moved and was granted leave to intervene as a party-defendant. He filed an answer and counterclaim denying liability as to plaintiff and alleging his damages to be $96,520.28.

The issues raised by plaintiff's complaint were submitted to a jury and were decided in favor of defendants. As to Dushney's counterclaim, upon plaintiff's motion for a directed verdict, the jury was directed to find, and did so find, in favor of plaintiff, except as to plaintiff's admitted liability in the sum of $167.02.

Dushney brings this appeal from that portion of the judgment which minimized the amount of the judgment on his counterclaim. The issue before this court then is whether the District Court was correct in directing the verdict on the counterclaim.

In oral argument both plaintiff and defendant conceded that disposition of this case depends on whether the court erred in excluding Dushney's evidence on his counterclaim.

In his counterclaim, Dushney alleged the existence of a general contract between plaintiff and the United States dated December 30, 1941 and entered into for the purpose of constructing Berlin Dam, a concrete and earth dam on the Mahoning River in Ohio. Subsequently, a written sub-contract dated March 25, 1942 was entered into between plaintiff and counterclaimant with the consent of the government. By this sub-contract the counterclaimant agreed to haul and dump excavated materials, as was required to be done by the plaintiff in its contract with the government. Measurement and payment for the work performed were to be in accordance with the provisions of the general contract, except for the unloading of cement and crushed stone, separate provision for which was made in the sub-contract. A separate agreement, pursuant to the sub-contract, for the hauling of stone, cement, and sand was also alleged. In addition, it was alleged that under the terms of the sub-contract it was the duty of plaintiff to keep records of the work done by the counterclaimant; that the records kept were incorrect; that plaintiff intermingled its hauling equipment with that of counterclaimant's and failed to distinguish between the work done

by the two parties; that plaintiff failed to give counterclaimant full credit for the hauling of stone and cement from railroad sidings; that plaintiff was a fiduciary of funds and accounts related to the sub-contract and, in such capacity, overcharged the counterclaimant for workmen's compensation insurance purchased on behalf of Dushney; that plaintiff made wrongful additions of state gasoline taxes in keeping the record of counterclaimant's expenses for the purpose of computing the latter's earnings; and that plaintiff kept counterclaimant's equipment idle for a substantial portion of the term of the sub-contract thereby causing additional damages. Itemized, the damages were listed as follows:

| | |
|---|---|
| Yardage of dirt and rock hauled but not paid for | $34,397.55 |
| Crushed stone, cement and sand hauled but not paid for | 8,433.19 |
| Overcharge for Workmen's Compensation insurance | 1,294.81 |
| Charge for Ohio State gasoline taxes | 1,279.96 |
| Discounts wrongfully withheld (since waived) | 1,710.77 |
| Idleness of hauling equipment and unreasonable delay | 49,404.00 |
| Total | $96,520.28 |

The sub-contract provided that the measurement and payment for the hauling of excavated materials (which were items under the general contract) by Dushney were to be made in accordance with the provisions of the general contract. It also provided that the measurement and payment for the hauling of common and rock excavations in stockpile (which were not items under the general contract) were to be made in the same manner as those items under the general contract, except that the measurements were to be based upon surveys of the stockpile. The general contract specified that measurement and payment for the hauling of excavated materials, as provided therein, should be made by means of surveys made before and after the excavations. As prescribed in both the general contract and the sub-contract the survey method consisted of surveying "the site area of the specified work * * *

and the original ground surface determined by this survey shall form the basis for the measurement of all excavation quantities. Measurement for payment for common excavation shall be made between the finished slopes * * * and the surface determined by the survey."

The counterclaimant concedes that his sub-contract with the plaintiff called for measurement by survey. He admits that the survey method is superior as a method of measurement, but insists that this provision of the sub-contract was not binding upon the parties, and contends that the court erred in excluding his evidence as to the quantity of excavated materials he hauled, even though his was secondary evidence and contrary to the method of measurement as provided in the sub-contract. The excluded evidence was a load count record of measurement kept by counterclaimant himself and consisted of daily reports kept by his drivers and foremen of the daily loads hauled by each of his trucks. The load count method then is based upon the number and size of the loads hauled by the trucks, and the estimates necessarily are of the earth and the rock in loose formation and not in the solid mass which is a condition of the survey method.

■■ There is no question that in cases of separate and conflicting methods of measurements, the terms of the contract, if clear and unambiguous, must determine the method of measurement. Bowers Hydraulic Dredging Co. v. United States, 211 U.S. 176, 29 S.Ct. 77, 53 L.Ed. 136, and Franklin A. Snow Co. v. Commonwealth, 303 Mass. 511, 22 N.E.2d 599. In view of the clearly expressed and admitted provision in the sub-contract that the measurement and payment for the hauling of materials be done by survey, the court did not err in excluding Dushney's evidence relating to load count and his claim for the amount of yardage hauled.

■ Dushney contends that he impeached plaintiff's survey records by evidence which showed them to be incomplete and inaccurate, and that the court therefore should have accepted the next best evidence, the load count method, as the true factual situation. In this connection he points to

the testimony of his expert witness, a civil engineer, who picked two cross-sections (in the survey method of measurement, a quantity computation made from the surveyors' notes of the surveys) out of 263 and criticized them as inaccurate and uncoordinate. Assuming arguendo, that the testimony was well founded, the counterclaimant has only himself to blame. An examination of the record shows that the surveys were taken by the government with two crews of five men each and by the plaintiff with two men, and that plaintiff accepted the government's survey records as conclusive when the latter paid plaintiff. Defendant cannot be heard to criticize at this point for his own ennui. He could have put his own surveyor on the job if he believed his contractual rights were being tampered with; this he failed to do. He did not intervene until ten months after the plaintiff sued his surety, which was two years after he had left the job.

▉ Dushney also claimed that plaintiff wrongfully and fraudulently mingled his hauling equipment with that of counterclaimant's; that this action precluded the making of accurate surveys, and that as a result he was deprived of credit for some of the yardage he hauled. We have considered Dushney's argument in this regard and think it will be enough to say that the record discloses that he signed the sub-contract specifying the survey method of measurement after he claimed he notified plaintiff of the mingling of the equipment. Moreover, one complaining of fraud cannot sleep on his rights and continue to deal with the party whom he accuses. In our case it appears that counterclaimant continued to deal with plaintiff after he claimed he had notified plaintiff of the mingling of the equipment. In this state of the record, he will be deemed to have waived any such claim he now seeks to assert. Aaron v. Dausch, 313 Ill.App. 524, 536, 40 N.E.2d 805.

▉ Dushney's counterclaim alleged, in addition to the services to be performed under the sub-contract, an oral contract to haul stone, cement, and sand. The court excluded evidence offered in support of it.

Article VIII of the sub-contract provided that any changes or extra work should be in writing. Dushney, however, claims that the oral agreement was entered into before the sub-contract was signed and that it was separate and distinct from the sub-contract. This appears to be a very tenuous argument, for it violates the parol evidence rule in that it attempts to add to the written sub-contract. In addition, the sub-contract which admittedly was drafted subsequent to the claimed oral agreement fails to make provision for it. When a contract, complete in itself, fails to incorporate a previous oral agreement, then it must be presumed that the parties have purposely rejected the earlier oral agreement. Seitz v. Brewers' Refrigerating Co., 141 U.S. 510, 12 S.Ct. 46, 35 L.Ed. 837; Lanum v. Harrington, 267 Ill. 57, 107 N.E. 826.

▉ It seems to us that no valid argument can be made that hauling the stone, cement, and sand was a separate and distinct subject from the sub-contract, and in view of the parol rule, the evidence was properly rejected.

▉ The counterclaim also alleged overcharges for Ohio State gasoline taxes and for workmen's compensation insurance. No proof was offered to show that plaintiff received any rebate from the State of Ohio for the gasoline used in Dushney's trucks.

▉ As to the claimed overcharge for workmen's compensation, no evidence appears in the record, except that Dushney testified: "I believe my employees were covered by Workmen's Compensation on this job. I would not know." Dushney, however, contends that the court erred when it sustained an objection to Dushney testifying to a conversation he had in February, 1942 with one Fry, in connection with the handling of the workmen's compensation insurance. After the court had sustained the objection, counterclaimant made no tender of proof as to what Dushney would testify. In this state of the record, we cannot say the court committed reversible error. Gantz v. United States, 8 Cir., 127 F.2d 498, 503.

▉ Finally, Dushney makes the point that he suffered damages through the delay

and the negligence of the plaintiff who kept Dushney's trucks idle. He contends that the court erred in excluding evidence concerning this item. He insists that it was an implied condition of the sub-contract that plaintiff have available sufficient loading equipment and personnel to keep counter-claimant's hauling equipment reasonably occupied.

Counterclaimant argues that where a party is delayed in his work by the obstructive tactics of the other contracting party, the former may recover damages. In support of his contention he has cited several cases, but they are distinguishable from the facts in our case. In Mansfield v. New York Central & H. R. Co., 102 N.Y. 205, 6 N.E. 386, the parties entered into a contract for the erection of an elevator upon piers over the Hudson River. Under the terms of the contract the railroad was to prepare the foundations for construction. The contract read that time was of the essence and provided for the payment of liquidated damages by the contractor if he failed to complete the elevator within a certain period. This it failed to do properly, and in breaching the contract it was held liable in damages. In Tobey v. Price, 75 Ill. 645, defendant was also held liable to the contractor for damages when he violated an express provision of the contract by not supplying the necessary materials. In Strobel Steel Construction Co v. Sanitary District of Chicago, 160 Ill.App. 554, the court allowed the contractor damages for the rental value of equipment held idle, because the defendant was guilty of such excessive delay that a cleared dam site area was not turned over to the contractor until two months after he had contracted to complete it. In United Steel Co. v. Casey, 6 Cir., 262 F. 889, the steel company had unreasonably delayed plaintiff in his attempt to perform an excavating contract. In the case of Jefferson Hotel Co. v. Brumbaugh, 4 Cir., 168 F. 867, the contract covered the rebuilding of a hotel partially destroyed by fire. The contract contained a provision for liquidated damages. But the contention that the court should apportion damages because of delay caused by both the litigants was rejected. These cases stand for the propositions then that a claim for damages will lie if there is (1) breach of contract, and (2) obstructive delay.

In our case neither of these conditions was present. There was no provision in the sub-contract for idle time. It merely specified that the work was to be carried on according to the demands of the plaintiff and the sub-contractor was to be paid for the work he performed. True, the sub-contract provided that time was of the essence, but the job was completed within the time limit (the sub-contractor agreed to complete his work by December 31, 1942, but he received a six months extension when the government extended plaintiff's time to June 30, 1943). There was no provision for bonus payments should the sub-contractor complete his work before the time allotted; hence, assuming that there was delay, Dushney was not deprived of any benefits. Moreover, under the terms of the sub-contract, Dushney's equipment was subject to the variable demands of plaintiff. If plaintiff required Dushney's trucks for three shifts, seven days a week, Dushney had to supply them. If the trucks were required for one shift only, Dushney had to be content. In view of these provisions, no breach of the sub-contract could be urged in this respect. And the contention that the plaintiff was guilty of excessive delay is enervated by the fact that the dam was completed within the contractual time limit. Under these circumstances, the court committed no error in excluding the evidence as to idle time. H. E. Crook Co. v. United States, 270 U.S. 4, 46 S.Ct. 184, 70 L.Ed. 438; United States v. Rice, 317 U.S. 61, 63 S.Ct. 120, 87 L.Ed. 53; United States v. Blair, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039; and United States v. Howard P. Foley Co., 329 U.S. 64, 67 S.Ct. 154.

Affirmed