John H. Cooke, J.
Johnson, Drake & Piper, Inc., entered into a contract, dated March 19, 1956, with the State of New York, acting by and through the Superintendent of the Department of Public Works for the construction of a portion of the New York State Thruway, Cazenovia Creek-Clinton Street, Erie Section, Subdivision E-8-D, Erie County, known as Contract F.A.E.T. 56-4 and F.A.R.C. 56-2.
The contract required the construction of approximately 4% miles of highway together with bridges and other necessary structures as well as excavation of fill from borrow pits to be transported to the various areas where needed.
The claimant questions three separate items and seeks recovery from the State on these items. For clarity of thought, each should be discussed separately.
The first item, for which the claimant seeks recovery, is for the credit of $721.33 which it maintains it was assessed for engineering charges for a period from November 1 to November 15, 1957.
On the 22d day of April, 1957, claimant requested an extension of time to and including December 30, 1957 and an extension of time was granted to and including October 31, 1957, which provided that the contractor claimant herein would not be assessed any additional engineering charges for that period. Thereafter, claimant sought an additional extension of 30 days to and including November 30, 1957, and included among *806 the reasons for such request was the fact that there had been a strike in cement plants which caused a shutdown from July 1 to July 31, 1957. This extension was granted, but with the provision that engineering charges would be assessed for the additional 30-day period.
Claimant maintains that on the 31st day of October, 1957, the work was substantially completed to the extent of 99% and that the remaining two weeks to and including November 15, 1957, were used for seeding and sodding, which the claimant maintains was extra work and not included in the contract.
The claimant seeks to recover on a second basis that there was not proper payment for the excavated fill which was referred to as Item 2BS on the contract. The said borrow pits, in question, were the Center Boad and the Seneca Creek Boad borrow pits and that the claimant had subcontracted the trucking of both borrow pits, and had an accurate count of the truck loads leaving both pits. It is maintained that the surveying and/or engineering method employed to certify the amount of the material taken from each borrow pit was improperly made and that a greater amount was excavated and trucked to the various areas than that for which payment had been certified.
Although there was a recheck made of the methods employed and the claimant given credit for additional yardage, claimant still maintains that the amount for which it was compensated was inadequate and that substantially more moneys are due.
Further, claimant seeks recovery for interest due on the amount concededly owing pursuant to the terms of the contract. Final estimate, as submitted, was $360,062.66, and since, according to the claimant, a discrepancy existed, final payment was not accepted as it would operate as a release of any and all claims.
A severance judgment, however, was granted by this court to permit payment but reserved to the claimant the right to claim interest. A check for the amount of the severance judgment was received by the claimant on or about February 6, 1959. Claimant, therefore, seeks interest from March 17, 1958, the date of acceptance by the State of the contract in question, to February 6,1959, the date of the receipt of the check, at the rate of 4% per annum.
During the pendency of the original claim, certain discrepancies were noted, and an amended claim was duly served. The amended claim has not been assigned nor has it been submitted to any other court or tribunal for audit or determination.
The State of New York, Public Works Specifications of January 2,1951, part of the subject contract, states at page 192, *807 under Item 2B, Unclassified Excavation: “ B. Measurement and Payment: The quantity of excavation to be paid for under this item will be the number of cubic yards of material measured in its original position, excavated and disposed of as required by the plans and specifications”.
Claimant offered as an exhibit, an agreement made between it and Driscoll Truck Line, Inc., which provided for the performance of certain work in connection with Item 2B. Article III of that agreement in part provided:
‘ ‘ The quantities of material for which the subcontractor shall be paid at the unit price stated in the within article to be determined by the Engineer of the Owner on the basis of cross-section measurements of the borrow area in which the subcontractor performs work hereunder.
“ It is distinctly understood and agreed that the determination of the said Engineer as to the quantities shall be final and binding upon the subcontractor.”
The word “ Owner” was described in the agreement as the New York State Department of Public Works.
Another subcontractor working at a separate borrow pit was paid in the same manner. Fred J. Staffen, Jr., from Fred Staffen Jr. Trucking Company, stated:
“ Q. How were you being paid by Johnson, Drake & Piper? A. I was getting paid by the yard out of the bank.
“ Q. What do you mean by out of the bank? A. Well, borrow * * * cross sections.
“ Q. Measurement in the borrow pit, itself, is that right? A. That’s right.”
It is, therefore, apparent that there was a definite method of payment provided for in the contract between the claimant and the State, as well as between the claimant contractor and its subcontractors. In spite of the fact that payment was to be based upon ground measurements made at the two borrow pits, claimant contended that truck load counts were kept and are more accurate.
Mr. Staffen, who operated the Center Boad borrow pit, where there was one exit, stated a truck count was made at the exit of the pit by their employees.
In the Seneca Creek Boad borrow pit, ingress and egress was had by means of several haul roads; therefore, it was necessary for a checker to be maintained at each elevating grader for each shift. The pit checkers were employees of the claimant, Johnson, Drake & Piper, Inc., and accomplished the count by use of a mechanical counter.
*808 There was testimony offered to demonstrate how the daily sheets, containing the track counts, were compiled by both subcontractors.
It should be pointed out that the truck counts of both subcontractors were taken at the borrow pit and not at the job site.
The State, in compliance with the provisions of the contract, retained as consulting engineers, Franklin & Lienhard, who surveyed the borrow pits and certified the amount of Item 2BS which had been excavated.
There was testimony that claimant and the engineer differed in the amount excavated. The engineers made some adjustment, but claimant still maintains the surveys made were inaccurate. Although there was an indication that claimant caused its own survey to be made, the results of such survey were not offered at the trial.
It appears that the court is presented with a twofold problem with reference to this portion of the claim: 1. Was the engineer’s survey so extremely inaccurate and actually erroneous that it was equivalent to bad faith, corruption or palpable mistake so as to render it useless for its purpose? 2. Was the track count method more accurate and acceptable so that it should be the basis of payment?
Claimant cited Burke v. Mayor (7 App. Div. 128) and Smith Contr. Co. v. City of New York (240 N. Y. 491). Burke v. Mayor (supra) held that although an engineer’s certificate determining the amount of work, labor and material under a contract is final, it cannot limit proper compensation where it is based on a misconstruction of the contract. The matter at issue differs since the issue is not the construction of the contract, and it would appear that all parties concerned were aware of the method upon which payment would be made.
Smith Contr. Co. v. City of New York (supra) held that if the engineer’s certificate has no reasonable basis, if it is patently erroneous, then it is equivalent to bad faith and the contractor is not bound by the certificate. This court feels that that case has no bearing on the instant ease since there surely was no evidence of bad faith.
The State cited Snow Co. v. Commonwealth (303 Mass. 511, 518-519): “ As to earth excavation, the contract provided that the number of cubic yards should be ‘ measured in place before excavation. ’ As to both pervious and impervious embankments, according to the contract, the number of cubic yards were to be ‘ measured in position after compacting. ’ Measurement by a *809 count of loads was thus excluded as a means of determining what was due the petitioner. Morse v. Boston 253 Mass. 247, 254 * * * it seems to us that the judge was right in holding the petitioner to the determination of quantities according to the contract ’ \
Bowers Dredging Co. v. United States (211 U. S. 176, 187): “ Coming to consider the contract, we are of the opinion that the court below correctly enforced its self-evident meaning. The requirement that the amount of material removed should be paid for by the cubic yard measured in place, and should be determined by surveys made before dredging is commenced and after its completion, clearly in and of itself established a method for fixing the amount of material which might be excavated, and which was to be paid for, absolutely incompatible with the contention that the contract contemplated that payment should be made for excavated earth which might slide into the channel from the slopes of the same during the progress of the work ”.
Albrecht Co. v. New Amsterdam Cas. Co. (163 F. 2d 16, 18):
‘1 The general contract specified that measurement and payment for the hauling of excavated materials, as provided therein, should be made by means of surveys made before and after excavations. As prescribed in both the general contract and the sub-contract the survey method consisted of surveying ‘ the site area of the specified work * * * and the original ground surface determined by this survey shall form the basis for the measurement of all excavation quantities. Measurement for payment for common excavation shall be made between the finished slopes * * * and the surface determined by the survey. ’
‘ ‘ The counterclaimant concedes that his sub-contract with the plaintiff called for measurement by survey. He admits that the survey method is superior as a method of measurement, but insists that this provision of the sub-contract was not binding upon the parties, and contends that the court erred in excluding his evidence as to the quantity of excavated material he hauled, even though his was secondary evidence and contrary to the method of measurement as provided in the sub-contract. The excluded evidence was a load count record of measurements kept by counterclaimant himself and consisted of daily reports kept by his drivers and foreman of the daily loads hauled by each of his trucks. * * *
“ There is no question that in cases of separate and conflicting methods of measurement, the terms of the contract, if *810 clear and unambiguous, must determine the method of measurement.”
In the instant case there can be no question as to the method of measurement intended by the parties. Claimant contended that there were errors and erasures in the field book entries and plotting and that, therefore, the truckload method was more accurate. The courts have held, however, where the engineer’s certification is final, it is binding upon the contractor in absence of fraud or palpable mistake (Molloy v. Village of Briarcliff Manor, 145 App. Div. 483; Sewer Comr. of Amsterdam v. Sullivan, 11 App. Div. 472; Smith v. Mayor, 12 App. Div. 391; also, see, Dowd v. State of New York, 239 App. Div. 141). The ease of Campbell v. State of New York (240 App. Div. 304) is factually a different situation than the instant case.
This court, therefore, finds that the contract was clear and unambiguous in its terms for payment of Item 2BS by survey measurements. Further, there was not sufficient proof that the surveys, as taken, were so erroneous as to render them useless or that they were fraudulently made.
Further, the court finds that .the truckload method of payment sought by claimant was far from accurate in that there was no count made on the construction site.
This portion of claimant’s claim is therefore dismissed.
The second portion of claimant’s claim is for engineering charges which were assessed against it in the amount of $721.33. Claimant had requested an extension of time to December 30, 1957, for various reasons set forth in its request. Upon considering the request and the reasons, the extension was granted to October 31, 1957, without imposition or assessment of engineering charges. Thereafter, claimant sought and was granted a further extension of time to November 30, 1957, but with the imposition of engineering charges after October 31, 1957. Claimant maintained that the additional time was necessary due to the increase in quantities of seeding and sodding and therefore should not be assessed the additional charges.
The court is of the opinion that the work left to be performed could have been performed prior to November 1, 1957 and that the imposition of the engineering charges was proper and this portion of the claim is therefore dismissed.
Lastly, the claim for interest on the severed portion of the claim is denied. Claimant had deposited interest-bearing municipal coupon bonds with the State of New York to secure the retained percentages. During the .time the bonds were retained, claimant was not deprived of the tax-free interest at the rate of *811 2.7%. The court, therefore, based upon the entire claim and each of the separate claims contained therein, denies this portion of the claim.
For the foregoing reason, the entire claim is hereby dismissed.