Henry A. Maurer, Appellee, v. James I. Loeb,
Appellant.

Gen. No. 43,879.

(Tuohy, P. J., dissenting in part.)

Opinion filed October 31, 1949.   Rehearing denied November 18, 1949.
Released for publication November 21, 1949.

WOLFF, KEANE & GOMBERG, of Chicago, for appellant; OSCAR M. WOLFF, THOMAS E. KEANE and ALLAN I. WOLFF, JR., all of Chicago, of counsel.

JOHN B. SCHMIDT and MAXFIELD WEISBROD, both of Chicago, for appellee.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Plaintiff brought this action November 16, 1942, against defendant, upon an alleged oral agreement made June 1, 1918.   An answer was filed, and a trial with a jury resulted in a verdict for plaintiff for $18,680.   After defendant's motion for a new trial was overruled, judgment was entered upon the verdict, from which defendant appeals.

The facts out of which this controversy arises are that defendant is the surviving partner in an insurance agency, which, for many years preceding the alleged agreement, had been doing business under the name of Klee, Rogers, Wile and Loeb and occupied extensive office space on the sixteenth floor of the building known as the Insurance Exchange Building; that the building then stood on the north half of the square block bounded by Sherman street on the east, Wells street on the west, Van Buren street on the south, and Jackson Boulevard on the north; that the south half had other buildings owned by other fee owners and occupied by various tenants; that the buildings to the south of the Insurance Exchange Building then had no connection with the latter and no common means of entrance or exit; that plaintiff, at the time of the alleged agreement, was occupying Room 1663 in the Insurance Exchange Building, under a lease for a term

beginning May 1, 1912, and ending April 30, 1942, from the Chicago Title and Trust Company, as trustee under a trust agreement creating the Insurance Exchange Building Trust; that the partnership on or about June 1, 1918, requested plaintiff to surrender his lease to, and space in, Room 1663 to the partnership; that they were in need of the space, and in return for the surrender of the space and the lease to them they would procure other space for him in the building and pay him any excess rent he was required to pay for other space in the building; that plaintiff was an insurance adjuster, and the partnership for many years was a substantial source of business for him.

The complaint alleged the oral agreement in the following language:

"On or about June 1, 1918, defendant on behalf of said partnership, orally requested plaintiff to deliver up possession of said premises to the partnership, and defendant on behalf of said partnership then and there promised and agreed that if the plaintiff should so do, the partnership would pay and reimburse to the plaintiff the difference between the rental provided under the lease and the amount the plaintiff would be forced to pay for the same amount of space in the Insurance Exchange Building *until such time as plaintiff might move out of the said building* prior to the expiration of the lease, or if plaintiff remained in the building at the end of the lease, then the partnership would pay and reimburse to the plaintiff the said difference to the end of the lease, the said payment to be made to the plaintiff *when the plaintiff would leave the Insurance Exchange Building prior to the termination of the lease, or if he remained in the said building to the end of said lease, then at the expiration of said lease;* and defendant on behalf of the partnership then and there further orally promised and agreed that the partnership would pay the plaintiff his costs and expenses

incurred in moving his office and place of business."
(Italics ours.)

It further clearly appears from the evidence that following the alleged oral agreement, plaintiff surrendered his lease to the partnership and wrote across the face of it a cancellation dated June 1, 1918, signed by him. The partnership secured space for plaintiff in Room 438 in the same building, and plaintiff moved into the new space June 10, 1918. Plaintiff's rent for Room 438 was less than his rent for Room 1663. In April, 1919, the partnership again requested plaintiff to surrender the space in Room 438 because of their need for it, and again plaintiff moved to Room 743 of the same building. For that space the Insurance Exchange Building Corporation gave plaintiff a lease dated April 14, 1919, for the term beginning May 1, 1919, to April 30, 1921, and again plaintiff wrote and signed a cancellation of the lease to Room 438 across the face of it. There was an increase in rent for the space in Room 743, and on December 29, 1919, plaintiff billed the partnership for $160 for excess rent for the period from May to December, 1919. On December 24, 1920, plaintiff billed the partnership for $240 excess rent for the year 1920. The partnership paid these bills on January 2, 1920, and March 1, 1921, respectively. In 1921, the building would not renew the lease to plaintiff for Room 743, and at the suggestion of defendant plaintiff took a lease to Room 719, at a price per square foot more than double his previous rent. On December 14, 1921, plaintiff again billed the partnership for $960 for excess rent for the year 1921, and on February 1, 1922, the partnership refused to pay the amount billed, advising plaintiff that they denied all further liability for any differences in rent.

Defendant denied having made any such alleged oral agreement with plaintiff, either on behalf of himself or the partnership. We are convinced, upon this whole

record, that there was such an oral agreement. No satisfactory reason has been advanced to us why the partnership should have paid the difference in rent to the plaintiff if no such oral agreement had been made. We think plaintiff is fully corroborated as to the making of such an oral agreement.

Part of the defenses interposed to plaintiff's claim and argued upon this appeal are: (a) that the agreement is within the Statute of Frauds, and (b) that the Statute of Limitations bars plaintiff's claim.

It appears without dispute that the several leases subsequent to the lease for Room 438 were to the plaintiff from the Insurance Exchange Building Corporation, as lessor. There were six such leases, the last one for Room 1861 in the Insurance Exchange Building, expiring October 31, 1928. A new building was erected on the south half of the block by the Underwriters Building Corporation, and the building was known as the Insurance Exchange Building South. It was opened for tenancy November 1, 1928, and plaintiff immediately moved into the new building and occupied space in the new building under eleven separate leases between the period November 1, 1928, and April 30, 1942. The leases were from the Underwriters Building Corporation, as lessor. The rent was in excess of what he was required to pay in Room 1663, and these differences in rent over said period are included in the present claim.

The record discloses that there was a party wall agreement between the Insurance Exchange Building and the new building, and a joint lobby or rotunda available for both buildings. The party wall agreement in evidence recited that the Insurance Exchange Building Corporation is the owner of the lots occupied by its building, and the Underwriters Building Corporation holding the lots and intending to erect the building to the south of the lot line of the Insurance Exchange Building. It clearly discloses that the build-

ing owned by the Insurance Exchange Building Corporation and that to be erected by the Underwriters Building Corporation were separate and distinct buildings, owned by separate and distinct corporations. It further appears from the evidence that there was one renting manager for the two buildings, but that separate rent rolls were maintained for the tenants in each building, and each corporation made leases to its respective tenants.

As to the defense of the Statute of Frauds, plaintiff takes the position, and we think with merit, that if such an oral agreement existed, it was fully executed by the plaintiff by the surrender of his office space and cancellation of his lease in Room 1663; that nothing remained to be done by him to carry out his end of the contract; that all the subsequent leases made by him for other space merely furnished the evidence of the amount of damages for breach of contract. An oral contract fully performed by the one party takes it out of the Statute of Frauds. *Ropacki v. Ropacki,* 354 Ill. 502; *Gould v. Elgin City Banking Co.,* 136 Ill. 60, 66.

Plaintiff's position with respect to the defense of the Statute of Limitations, we deem without merit. If we accept plaintiff's version of the alleged oral agreement, the liability to pay the differences in rent would accrue either at the time he moved out of the Insurance Exchange Building, November 1, 1928, or if he remained in the Insurance Exchange Building, then on April 30, 1942, the expiration of his original lease for Room 1663. The Statute of Limitations begins to run from the time the right of action accrues. *Shelburne v. Robinson,* 8 Ill. 597, 599; *Ennis v. Pullman Palace Car Co.,* 165 Ill. 161, 173.

When plaintiff moved into the new building, November 1, 1928, and took a lease from the Underwriters Building Corporation, as lessor, did he move out of the Insurance Exchange Building, and did the liability for

the excess rent then accrue against defendant? There is nothing in the record to indicate that at the time the oral agreement was made June 1, 1918, the parties knew, or had any reason to know or contemplate, that another building would be erected ten years later on the south half of the block, not by the Insurance Exchange Building Corporation, but by an entirely separate and distinct corporation. The chain of title to the two plots ran to separate and distinct grantors and grantees. The building on the south half of the block could not, so far as the evidence in the record discloses, be considered an addition to the Insurance Exchange Building on the north half of the block. Nor does the evidence disclose any set of interlocking directors or officers of the two separate corporations, or that the stockholders in the two corporations are the same or substantially the same. Had that been shown to exist, the law would look behind the mere form of corporate entity and consider it as substantially one ownership. It will be remembered that plaintiff remained in the new building under eleven separate leases from a new lessor and not the Insurance Exchange Building Corporation.

When plaintiff entered into this oral contract, he was bound to know that its enforcement could not take place until twenty-four years later, unless he accelerated the accrual of liability against the defendant by moving out of the Insurance Exchange Building. The law should exact of one making such a contract that he allege and prove an oral contract, clear and explicit, free from doubt or conjecture. If there be any doubt as to what his oral contract meant in reference to moving from the Insurance Exchange Building, that doubt should be resolved against him. The application of this requirement against plaintiff is more necessary in the instant case than in the ordinary case, because it appears clearly from the evidence that between the time of the making of the contract and the

bringing of this suit, the partners of this defendant, who would know something of the alleged agreement, have died, and many of the relevant records of the partnership have long since the making of this agreement been destroyed.

We regard the conclusion inescapable that the moving from the Insurance Exchange Building into the new building was a moving "out of" the Insurance Exchange Building, within the meaning of the oral contract, and that upon plaintiff's own version of the oral agreement his moving from the Insurance Exchange Building into the new building fixed the accrual of liability from defendant to plaintiff. The suit, not having been brought until 1942, was barred by the Statute of Limitations, Ill. Rev. Stat. 1947, ch. 83, par. 16, § 15 [Jones Ill. Stats. Ann. 107.275].

Other questions argued by defendant, we deem unnecessary to consider.

Since there can be no recovery upon this oral contract, the judgment of the circuit court is reversed.

*Reversed.*

NIEMEYER, J., concurs.

TUOHY, P. J., dissents. With that portion of the majority opinion which holds that the action of plaintiff in moving from one section of the Insurance Exchange Building to a newly completed addition which was known as the Insurance Exchange Building South was a moving out of the Insurance Exchange Building, I respectfully disagree. With the other conclusions of the opinion, I am in accord.

The portion of the majority opinion with which I disagree is predicated substantially upon the proposition that at the time of the making of the oral agreement the parties did not contemplate that another adjacent building would be erected later by an entirely separate and distinct corporation, but that they contracted with reference to the structure which was occupied at the time the contract was made. In my

opinion it makes no material difference so far as this case is concerned whether the fee to the Insurance Exchange Building South is held by a corporation different from that which holds the title to the Insurance Exchange Building North. In the original contract the parties referred to the Insurance Exchange Building, not in the light of the ownership, but rather as a means of identification. The erection of an addition to the Insurance Exchange Building, even though it was by a different corporation, in no wise changed the identity or character of the building. As a matter of fact, it did not even change the name or the address. The original structure became known, after the erection of the addition, as Insurance Exchange Building North, and the addition or annex as the Insurance Exchange Building South, both structures maintaining the address 175 West Jackson Boulevard.

It is a fair inference from the evidence that the Insurance Exchange Building, which, as its name indicates, caters to a group who are engaged, in some form or another, in the underwriting, adjusting, and selling of insurance in its many various forms, continued to be used for such general purposes after the erection of the south section and continued to be occupied by the same class of clientele. The two sections of the building were connected throughout with uninterrupted corridors, occupied a common lobby, lent themselves to the same general architectural scheme, and were maintained by a single management having a single office. It would be as reasonable to say that because many of our famous governmental and commercial edifices have had many additions and structural changes over the scores of years of their existence that their identities have changed and they have become different buildings. It is my opinion, from a review of the evidence, that both parts of the building, which plaintiff occupied before and after 1928, were integral parts of a common whole. If the question

bringing of t: or not the Insurance Exchange Building who would kifferent building from the one concerning have died, parties here contracted be treated as one of partnersh jury, by a general verdict, determined that ment contrary to the contention of the defendant. In .y opinion the jury's verdict was correct.

Defendant throughout the years has profited by low rental at the expense of the plaintiff. The verdict does simple justice. It should be affirmed.