Cook-Master, Inc., Appellant, v. Nicro Steel Products, Inc. et al., Appellees.

Gen. No. 44,897.

Opinion filed February 20, 1950. Released for publication March 7, 1950.

Pope & Ballard, of Chicago, for appellant; John R. Whitman and James R. Oberly, both of Chicago, of counsel.

ADCOCK & FINK, of Chicago, for appellees; EDMUND D. ADCOCK, ELI E. FINK and SHELDON O. COLLEN, all of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Plaintiff appeals from an order sustaining a motion to strike its second amended complaint, dismissing the action, and entering judgment against plaintiff.

The question upon this appeal is whether any of the six counts of the second amended complaint, claiming damages, allege a cause of action. Count I refers to a written contract and alleges a breach thereof. Count II refers to an oral contract concerning the same subject matter, and a breach thereof. Count III alleges unfair competition, the misappropriation of plaintiff's confidential information given to the defendants, and the misappropriation of the particular designs, sketches and specifications involving the subject matter of the oral contract. Count V refers to a like cause of action arising out of the written contract. Counts IV and VI refer to the same oral and written agreements respectively, and charge a conspiracy to maliciously and intentionally interfere with plaintiff's contractual relations, and to destroy plaintiff's organization and business.

Count I in substance alleges that plaintiff, prior to December 24, 1946, was organized for the sole purpose of marketing on a nationwide scale, direct to household users, certain sets of cooking utensils of plaintiff's own unique design and fabrication, especially adapted for waterless cooking, to be marketed under the name and trademark of "Cook-Master"; that defendant corporation was engaged in the steel manufacturing and fabricating business but had never manufactured or sold products of the type and design referred to; that plaintiff and defendant corporation entered into nego-

tiations for the manufacture by defendant of said cooking utensils, especially and exclusively for plaintiff; that during said negotiations plaintiff instructed defendant as to the manner in which said utensils would be made; that as a result of said negotiations the parties agreed that the price to be paid by plaintiff to defendant for each set of cooking utensils manufactured would be a reasonable price, and a maximum of $90 for each of the first 100 sets, to be made as sample sets and used as demonstrators by the selling force to be employed by plaintiff, and that the price for all other sets to be manufactured would be a reasonable price, and a maximum of $45 per set; that to evidence said understanding and agreement, plaintiff and defendant corporation entered into a written offer and acceptance, as follows:

"December 24, 1946

Cook-Master, Inc.
1800 E. Olive
Milwaukee, Wisconsin
Attn: Mr. M. L. Markey
Gentlemen:

*This letter will confirm our understanding of this date, whereby we agree to manufacture for you exclusively the line itemized as follows:*

| | |
|---|---|
| 1—1 quart Sauce Pan | 20 gauge |
| 1—2 quart Sauce Pan | 20 gauge |
| 1—3 quart Sauce Pan | 20 gauge |
| 1—4 quart Sauce Pan | 19 gauge |
| 4—covers | 24 gauge |
| 1—6 quart dutch oven | 18 gauge |
| 1—dome cover | 24 gauge |
| 1—insert for 2 quart | 24 gauge |
| 1—6″ skillet | 16 gauge |
| 1—10″ skillet | 14 gauge |
| 1—flat cover for 10 inch skillet | 24 gauge |
| 1—12-cup vacuum coffee maker | |

Above items to be made of 18–8 stainless steel.

523

This line shall be copyrighted under the name 'Cook-Master' with the United States Patent Office and the 48 states, and *we shall hold the copyrights and license you exclusively to use this name, and sell the products referred to above.* In the event the name 'Cook-Master' shall have already been taken, then another name shall be applied for which you select and which we agree to use.

We agree to make 100 sample sets in accordance with the above specifications and gauges, for your approval, and to be delivered to you on or about February 15th, 1947. Price of these samples shall be no more than $90.00 per set and shall be paid for as follows:

$5,000 with the order—Balance upon delivery

*As per our conversation, we agree to accept your order for 2,000 sets as specified* at a maximum price of $45.00 per set, delivery to be as per written request.

This letter, when signed and accepted by you, shall constitute your agreement and contract with us.

Very truly yours,

Nicro Steel Products, Inc.

By (signed) Harry Wohl.

° Harry Wohl

President

Accepted:

Cook-Master, Inc.

By (Signed) Theodore N. Gould, Pres.'' (Italics ours.)

It is further alleged in Count I that plaintiff paid $5,000 to defendant upon the execution of said written offer and acceptance, and that it was then and there mutually understood and agreed between the parties that acceptance by plaintiff of said written offer constituted a promise by plaintiff to purchase from defendant the sets of cooking utensils in the amount and under the terms contained in said written offer; that plaintiff, in reliance upon said agreement, expended

large sums of money in establishing a sales organization to sell said cooking utensils direct to household users, and in the advertising, demonstrating and promotion of the sale of such sets of cooking utensils; that defendant corporation knew that plaintiff was expending said large sums of money, in reliance upon defendant's promise to manufacture for and sell exclusively to plaintiff the 2100 sets of utensils referred to in said written offer; that subsequent to said written offer, and on February 25, 1947, the parties orally agreed as follows: Plaintiff was to pay and defendant was to accept an additional sum of $4,000 as a further consideration for defendant's promise to sell exclusively to plaintiff 2,000 additional sets, and that said additional sum of $4,000 would be accepted by defendant as full and complete payment of the first 100 sets as well as earnest money; that plaintiff paid to defendant the additional sum of $4,000, and defendant then and there agreed to manufacture exclusively and sell to plaintiff said 2,000 additional sets, and plaintiff promised and agreed to purchase said 2,000 additional sets at an agreed price of $45 per set in cash, upon delivery to plaintiff's place of business in Milwaukee, Wisconsin; that said price was then and there agreed upon, and it was further mutually agreed that deliveries would be made by defendant and accepted by plaintiff at the rate of 400 complete sets per month, starting between the 10th and 20th days of June 1947, the exact time to be according to plaintiff's specific instructions, and that then and there the plaintiff approved and accepted the first 100 sample demonstrator sets; that following said agreements, plaintiff, in reliance thereon, sent its trained salesmen into various communities in several states to solicit and take orders, on especially printed order blanks, for sets of cooking utensils; that said salesmen succeeded in taking orders for sets, aggregating 1500 in number, in a period of four months, and

accepted deposits from customers thereon; that plaintiff thereby became and was obligated to pay to the several salesmen for their services, expenses and commissions, large sums of money, aggregating $85,000; that said defendant corporation, through its officers and agents, had full knowledge at all times of said facts so alleged; that deliveries of over 300 of said sets were promised by plaintiff to its customers during the month of June 1947, and several hundred more for delivery during each of the months of July, August and September 1947, all of which defendant had full knowledge at all times; that plaintiff on or about May 1, 1947, submitted to said defendants its written schedule of deliveries for the 2,000 sets, specifying the number of sets to be delivered during the periods designated; that defendant, during the months of May, June, July, August and September 1947, manufactured 2,000 sets of said cooking utensils, according to plaintiff's design and specifications; that defendant was able to and could have delivered 2,000 such sets to plaintiff in accordance with its agreement, but defendant did not deliver said cooking utensils and, without cause, refused to make any deliveries whatsoever to plaintiff; that had defendant delivered the 2,000 sets, plaintiff readily would have sold and delivered to purchasers the said 2,000 sets before the bringing of the action, and would have made a profit thereon of not less than $60,000; that plaintiff was at no time in default, and was at all times ready, willing and able to accept said sets of cooking utensils, according to the schedule submitted, and was ready, able and willing to pay the agreed purchase price of $45 per set upon delivery thereof; that notwithstanding the several demands made upon defendant to deliver said sets, defendant vexatiously, maliciously and completely without justification refused to accept said tenders or to deliver said sets in accordance with its agreement with plaintiff.

Count II is substantially the same as Count I, except that it refers to the oral agreement concerning the same subject matter.

Count III, in addition to alleging the facts set up in Count II, charged that defendants Wohl, Fallis, Wiley and Schraeger, individually and as officers and agents of said defendant corporation, after the alleged agreements made between the defendant corporation and plaintiff, organized and incorporated a new company known as Flavor-Seal Cookware, Inc. (for convenience hereinafter referred to as Flavor-Seal), and the same officers, agents and employees of the defendant corporation were put in charge and control of Flavor-Seal; that said individual defendants, and in concert with one another, repudiated each and every obligation and agreement of defendant corporation with plaintiff; that Flavor-Seal then proceeded to and did organize a sales force and proceeded to sell sets of cooking utensils to consumers in various cities and in various states in direct competition with plaintiff; that the sets sold by Flavor-Seal were manufactured solely by the defendant corporation and were identical in design and specifications with the sets of cooking utensils defendant corporation had promised and agreed to manufacture exclusively and especially for plaintiff; that Flavor-Seal sold more than 400 of said sets which had been stamped with the trade name "Cook-Master," which trade name was removed by the defendant corporation and the sets reprocessed to obliterate and remove the same, and in place thereof stamped with the name "Flavor-Seal"; that the sales, advertising and promotional material used by Flavor-Seal, in the sale of said cooking utensil sets, was copied *verbatim* from confidential material used by plaintiff in its own marketing and sales promotion work, and which had been submitted to the defendant corporation by plaintiff; that as a result of the acts of said defendants and de-

fendant corporation in placing upon the market "Flavor-Seal" cookware, plaintiff was deprived of its rights to have its own sets of cooking utensils occupy a distinct and unique position in the cookware field, wherein its specially designed cookware would be associated solely with its own organization and no other selling agency or organization; that said defendants, in marketing the sets of cooking utensils through Flavor-Seal Cookware, Inc., rendered plaintiff unable to make delivery of the sets of cooking utensils sold by it.

Counts IV and VI are the conspiracy counts. They charge that plaintiff trained and organized a large number of salesmen, to-wit, 100, to sell such sets of cooking utensils, and that said salesmen, within a period of four months following the agreements entered into between plaintiff and defendant corporation, took and received orders for sets bearing the trade name "Cook-Master" aggregating 1500 sets; that defendants, and each of them, observed and knew that during the months of February, March and April 1947, plaintiff had built and was building a business out of which large profits could be and were expected, and that through its salesmen it had engaged, trained, contracted with and sent into the field to sell such utensil sets, plaintiff had received and accepted large numbers of orders from customers, and that said defendants, and each of them, did wilfully, wrongfully and maliciously conspire to and with each other to cheat and defraud the plaintiff out of, and to acquire for themselves, the benefits and results of plaintiff's said business in the manner hereinafter set forth; that said defendants conspired with each other to wilfully and maliciously destroy the credit and good name of plaintiff, to involve plaintiff in financial difficulties with purchasers who had paid deposits to plaintiff's salesmen to apply upon the purchase price of said cooking utensils, and in pursuance of said conspiracy organized

528

said Flavor-Seal as a dummy or mere name-holding corporation, under the same management and control as the defendant corporation, and for the express purpose of engaging in the business of selling cooking utensils of the design and specifications furnished them by plaintiff; that in place of the trade name "Cook-Master," they were to and did imprint the trade name "Flavor-Seal"; that defendants refused to deliver any of said cooking utensils to plaintiff, although plaintiff was ready, willing and able to purchase the same and made repeated tenders of money to pay therefor, and although defendants had in their possession large numbers of said cooking utensil sets manufactured and ready for delivery; that defendants caused said cooking utensil sets to be sold to the public generally, and particularly to various of plaintiff's customers, from whom plaintiff's salesmen had theretofore obtained orders and to whom plaintiff had contractually obligated itself for delivery, which defendants well knew; that defendants maliciously stated to the salesmen employed by plaintiff that plaintiff would be unable to obtain any cooking utensils for delivery, and wilfully and maliciously did induce and entice said salesmen to breach their contractual relations with plaintiff and to enter into the employment of one or more of the defendants, and to fill orders for "Cook-Master" sets already accepted by said salesmen on behalf of plaintiff with identical sets of cooking utensils stamped "Flavor-Seal," and that the profits from such orders would and did accrue entirely to the defendants; that such conduct on the part of defendants was a breach of faith, which resulted in plaintiff being deprived of its business as exclusive distributor of such cooking utensils of its own design and specification, in the destruction of the worth and value of plaintiff's trade name, in the impairment of the credit of the plaintiff, and in the disruption and total destruction of plaintiff's selling

529

organization; that it resulted in a loss of confidence of plaintiff's purchasers and salesmen in plaintiff's business, and that plaintiff was subjected to divers lawsuits and threats of lawsuits by plaintiff's customers and salesmen, thereby causing substantial and irreparable loss to plaintiff.

■ The facts, well pleaded in each of the counts referred to, must, for the purpose of testing their sufficiency, be accepted as true. *Pendleton v. Time, Inc.,* 339 Ill. App. 188. Many points are raised by defendants in their attack upon the second amended complaint, but we shall consider only those having an important bearing upon the main question presented. Tersely stated, defendants' contentions are: (a) that Count I relies upon a written contract, which is unenforceable because it lacks mutuality and is too indefinite as to price to be enforceable; (b) that Count II relies upon an oral contract, unenforceable under the Statute of Frauds, and likewise too vague and indefinite; (c) that Counts III and V do not afford a remedy for unfair competition and misappropriation of confidential matter; and (d) that Counts IV and VI do not sufficiently charge a conspiracy nor a claim for malicious or intentional interference with plaintiff's contractual relationships. We shall discuss these contentions in the order stated.

■ The first count is not subject to the objections lodged against it. Defendants argue that the written agreement declared upon lacks mutuality, in that there is no specific undertaking on the part of plaintiff to purchase. While the promise to purchase is not expressed specifically, the obligation of plaintiff to purchase is sufficiently discernible and implied from the entire writing. An analogous contention was made in *Thebest Laundry & Cleaning Co. v. Duffy, Jr.,* 293 Ill. App. 252, where the written contract did not expressly obligate plaintiff to do the laundry work and

dry cleaning which defendant promised to bring to it, yet this court said at p. 255:

"While there is no express provision in the contract that plaintiff agreed to do the laundry and dry-cleaning work, we think it was clearly implied."

██ The statement by JUDGE CARDOZO in *Wood v. Duff-Gordon,* 222 N. Y. 88, clearly expresses the principle:

"A promise may be lacking, and yet the whole writing may be 'instinct with an obligation,' imperfectly expressed. . . . If that is so, there is a contract."

The written offer and its acceptance are sufficiently specific with respect to the article to be manufactured exclusively for use and sale by plaintiff, and the quantity. It also provides: "As per our conversation, we agree to accept your order for 2,000 sets as specified at a maximum price of $45.00 per set, delivery to be as per written request." This plainly means that there was a specific order for 2,000 sets, and that delivery was to be made from time to time upon written request. The count alleges that such written request for delivery, with a specific schedule for deliveries, was given to the defendant corporation by plaintiff on or about May 1, 1947; that defendant manufactured the items with the trade name "Cook-Master" stamped thereon, but refused without cause to make delivery, although plaintiff was ready, able and willing to accept delivery and to pay defendant therefor. The count charges that it was understood and agreed between the parties that plaintiff was to pay a reasonable price for the 100 sample sets, not to exceed $90 for each set, and a reasonable price for the 2,000 sets, not to exceed $45 per set.

██ The further objection to the contract that it is too vague and indefinite to be enforceable, since no definite price was agreed upon, and that fixing a maxi-

mum is not fixing a definite price, relying upon *Ibold v. 3920 Lake Shore Drive Bldg. Corp.,* 326 Ill. App. 257, and *Dwight Bros. Paper Co. v. Ginzburg,* 238 Ill. App. 21, we deem without merit. The cases do not support defendants' contention. Neither of the cases involved the Uniform Sales Act, nor was the Act referred to or discussed. Section 9, subsec. (1) of the Uniform Sales Act (Ill. Rev. Stat. 1947, ch. 121½ [Jones Ill. Stats. Ann. 121.13, subsec. (1)]) provides:

"The price may be fixed by the contract. . . ."
Subsection (4) provides:

"Where the price is not determined in accordance with the foregoing provisions the buyer must pay a reasonable price. What is a reasonable price is a question of fact dependent on the circumstances of each particular case."

Hence, if we accept defendants' argument that no price is fixed because it is too vague and indefinite, then certainly the provisions of the Uniform Sales Act must apply, and particularly when the count alleges that the parties had understood and agreed that a reasonable price would be paid per set, not exceeding $45 per set for the 2,000 sets, and not to exceed $90 per set for the sample sets.

██ All laws in existence when a contract is made necessarily enter into and form a part of it, as fully as if they were expressly referred to or incorporated in its terms. *Illinois Bankers Life Ass'n v. Collins,* 341 Ill. 548, 552.

██ ██ What we have said concerning Count I applies with equal force to Count II, which relies upon an oral contract concerning the same subject matter, except as to the contention with respect to the Statute of Frauds. It is proper, under the present Practice Act, to plead a cause of action in separate counts in the alternative, such as a written contract in Count I and an oral contract in Count II. Upon the trial, the proof

should determine upon which plaintiff is entitled to recover. Sections 32 and 33, Civil Practice Act (Ill. Rev. Stat. 1947, ch. 110 [Jones Ill. Stats. Ann. 104.032, 104.033]). Section 4, subsec. (1) of the Statute of Frauds (Ill. Rev. Stat. 1947, ch. 121½ [Jones Ill. Stats. Ann. 121.08, subsec. (1)]), upon which defendants rely in support of their contention that the oral contract is unenforceable, is in our judgment inapplicable. Subsection 2 of section 4 specifically provides:

" . . . but if the goods are to be manufactured by the seller especially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business, the provisions of this section shall not apply."

█ The averments of Count II bring the oral agreement charged within the quoted language of subsection 2. *Henry J. Handelsman, Jr., Inc. v. S. E. Schulman Co.*, 319 Ill. App. 479. Moreover, there was performance on the part of the plaintiff, alleged in the count, which takes it out of the Statute of Frauds. *Maurer v. Loeb*, 338 Ill. App. 644, 649; *Ropacki v. Ropacki*, 354 Ill. 502; *Gould v. Elgin City Banking Co.*, 136 Ill. 60, 66.

█ The objections raised against Counts III and V, predicated upon the theory of unfair trade competition and misappropriation of confidential matter, we deem well taken. We do not regard the facts alleged in Counts III and V sufficient to embrace a confidential or trust relationship, or matters of such secret nature as would compel the defendants to treat it as confidential matter. Nor does the relationship of the parties partake of a fiduciary nature. The rule stated in 4 Restatement of Law, Torts, p. 5, logically applies to these counts:

"The subject matter of a trade secret must be secret. Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his

secret. Matters which are completely disclosed by the goods which one markets cannot be his secret.''

The designation, confidential matter, employed in the counts is but a mere legal conclusion. *Byron v. Byron,* 391 Ill. 256, 259; *Aaron v. Dausch,* 313 Ill. App. 524, 533. The counts do not allege that plaintiff and defendants agreed to treat all information submitted by plaintiff to defendants as confidential and to be respected as such by defendants.

The attack upon Counts IV and VI we deem without merit. These are conspiracy counts, and the conspiracy alleged, if proved, should afford a right of action. These counts definitely allege a plan or scheme to appropriate to their own benefit and profit the property rights of the plaintiff. The conspiracy contemplated allowing plaintiff to embark upon an expensive program of sales organization, marketing, advertising, initial investment by payment of $5,000 to the defendant corporation, and the additional payment of $4,000 for the 2,000 extra sets of utensils; allowing plaintiff to become obligated to customers to whom sets were sold, and receiving deposits thereon from them, and for breach of their contract to deliver to such customers the sets sold; and then deliberately interfere with the contracts of employment with members of plaintiff's sales organization (whether or not they be for a definite period of employment is immaterial), and by false representations induce such salesmen to divert their efforts from the plaintiff and procure for the defendants orders for said sets of cooking utensils. In a nutshell, the conspiracy, as alleged, was one to lure the plaintiff into the creation of the specially designed utensils, spend its money in an effort to market the article, and then incorporate another company, referred to as Flavor-Seal, as a channel through which to effectuate their conspiracy. Defendants, as charged, were in full ownership and control of Flavor-Seal. We

534

need not look beyond *Doremus v. Hennessy,* 176 Ill. 608, squarely applicable to Counts IV and VI. The rule there laid down has not been departed from in this State. In the case cited, the defendants conspired to injure plaintiff in her good name and credit, and to destroy her business, and to that end wilfully and unlawfully, by intimidation and unlawful inducement, caused parties who were doing her work to refuse to longer do the same, and by threats, intimidation, false representations and unlawful inducements, caused others who were operating laundries to refuse to take or do her work. It was there said (pp. 613, 614):

"The contention of appellants is, that they cannot be held liable for merely inducing others to break their contracts; that the parties who broke their contracts were the only ones liable, they being free agents and not coerced or influenced by force or fraud; that their acts in inducing parties to break their contracts with appellee were not mere malicious acts, done solely with the intent to injure her, but were in the line of legitimate trade competition, for which they cannot be held liable; nor can they be held liable, they claim, for acts which are charged to have been done in pursuance of a conspiracy, as it is insisted that a conspiracy does not create a liability in a civil action, as the damage illegally done, and not the conspiracy, must be the gist of the action.

"The common law seeks to protect every person against the wrongful acts of others, whether committed alone or by combination, and an action may be had for injuries done which cause another loss in the enjoyment of any right or privilege or property. No persons, individually or by combination, have the right to directly or indirectly interfere or disturb another in his lawful business or occupation, or to threaten to do so, for the sake of compelling him to do some act which,

in his judgment, his own interest does not require. Losses wilfully caused by another, from motives of malice, to one who seeks to exercise and enjoy the fruits and advantages of his own enterprise, industry, skill and credit, will sustain an action.''

We followed the quoted statement in *Pendleton v. Time, Inc., supra,* and see cases there cited.

Accordingly, the order of the superior court sustaining the motion to dismiss Counts III and V is affirmed, and as to Counts I, II, IV and VI it is reversed and the cause remanded with directions to overrule said motion and require an answer to said counts.

*Affirmed in part and reversed in part and remanded.*

NIEMEYER, J., concurs.

TUOHY, P. J., took no part.