THE ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellants, *v.* CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Plaintiff-Appellee.

(No. 11987;

Fourth District—January 28, 1975.

William J. Scott, Attorney General, of Chicago (Peter A. Fasseas and James R. Sullivan, Assistant Attorneys General, and Nolan K. Sims, of counsel), for appellants.

Nafziger & Otten, of Springfield, for appellee.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Upon a complaint under sections 5—7 of the Electrical Supplier Act (Ill. Rev. Stat. 1969, ch. 111⅔, pars. 405—407) by Coles-Moultrie Electric Cooperative (designated defendant in administrative review), the Illinois Commerce Commission found that defendant was entitled to provide all electrical service to Lot 10, Block G of Annis subdivision to the City of Mattoon, and ordered that Central Illinois Public Service Company (designated plaintiff in administrative review) was to discontinue service and remove its facilities from such lot.

The Commission found that on July 1, 1965, defendant had entered into a written agreement with the owners of real estate which thereafter became the Annis Subdivision:

> "[I]n which Coles-Moultrie Electric Cooperative agreed to provide electric service to the south 122 feet of the Annis Subdivision and is therefore entitled to provide all electric service to Lot 10 in Block G of Annis Subdivision."

The right of defendant to provide electrical service was found to exist under the provisions of section 5 of the Electric Supplier Act (Ill. Rev. Stat. 1969, ch. 111⅔, par. 405.)[1]

Upon administrative review the circuit court reversed the order of the Commission. In its memorandum the court determined that the findings of the Commission were not "supported by the law" for the reason that the contract was lacking in mutuality, and concluded that as of the date of the Annis contract such "could not be enforced by either side."

The agreement at issue designated the owners of the described real estate, Annis, as "the DEVELOPER," and it was executed by them under such designation. The agreement recited that the "DEVELOPER" had title to land which was later described and was "desirous of electrical service to said land," that defendant was a corporation "desiring to provide electrical service to the said land," and after reciting valuable consideration and mutual agreement provided that the "Cooperative is to provide necessary electrical service to the following described land." A subsequent paragraph provided that the contract "shall continue until

---

[1] "§ 5. Each electric supplier is entitled * * * to (b) furnish service to customers or premises which it is not now serving but which it had agreed to serve under contracts in existence on the effective date of this Act * * *."

July 1, 1995," a term of 30 years, with provision for renewal for a further term of 30 years.

The record shows that on June 21, 1965, Annis had granted an easement to defendant to erect a system of lines upon such real estate upon the completion of a drainage ditch or "at the request of the owner." The record shows that at the time of the proceedings, defendant had supplied underground electrical service to all 15 lots in Block G.

It appears that an engineer employee of plaintiff had purchased Lot 10 in Block G and thereupon demanded that defendant remove its facilities from the lot. Thereafter plaintiff had extended its lines 182 feet overhead and 742 feet underground to provide service to Lot 10, effective September 12, 1969. The record does not show any notice by plaintiff to defendant of such extension as is provided in section 7 of the Electric Supplier Act. (Ill. Rev. Stat., ch. 111⅔, par. 407.) It is not alleged that plaintiff came within any of the exception provisions for giving notice.

■■ Before the Commission, plaintiff argues that section 5 of the Electric Supplier Act did not authorize defendant to supply service because the Annis contract was lacking in mutuality and was unenforceable. It is generally said that one who is not a party to a contract cannot complain that it is not mutual in character. (17 C.J. *Contracts* § 100(1)b (1963).) Want of mutuality is no defense where a contract has been executed. (*Corso v. Dixon*, 348 Ill.App. 378, 109 N.E.2d 241; *Hall v. Gruesen*, 22 Ill.App.2d 465, 161 N.E.2d 345.) As of the time that the plaintiff extended its line to Lot 10, defendant had executed the Annis contract to provide service to all Lots.

In *Illinois Power Co. v. Illinois Commerce Com.* 39 Ill.2d 406, 235 N.E.2d 614, it was held that the proprietors of a subdivision were "customers" and that the subdivision constituted "premises" within the terms of the Electric Supplier Act, sections 3.3, 3.12 and 5, even though no construction had occurred in the subdivision and no service had been supplied.

■■ We do not agree with the conclusion of the trial court that the provision of "the necessary electrical service" is here so lacking in detail as to be meaningless, or that Annis was not required to purchase any electricity from the defendant.

■■ In *Armstrong Paint & Varnish Works v. Continental Can Co.*, 301 Ill. 102, 105, 133 N.E. 711, the court said:

> "In construing a contract it is proper for a court to take into consideration the surrounding circumstances. It should place itself as nearly as it can in the same situation as the parties who made the contract, so that it may view the circumstances as they viewed them and so it may judge the meaning of the words and their

application to the things described as the parties judged and applied them. [Citation.]"

The court's memorandum does not note or comment upon the fact that the Annis contract was for a term of 30 years with provision for extension for a like term and that the contract was designated as binding upon the heirs, successors and assigns of the parties.

In *Cook-Master, Inc. v. Nicro Steel Products, Inc.*, 339 Ill.App. 519, 90 N.E.2d 657, plaintiff sought damages for breach of contract. Defendant contended that the contract contained no specific agreement that plaintiff would purchase so that the contract lacked mutuality. The court held that under such contract a commitment to purchase was clearly implied. (See also *Hillman v. Hodag Chemical Corp.*, 96 Ill.App.2d 204, 238 N.E. 2d 145.) In 1A Corbin, Contracts § 156, at 30-32 (1963), it is said:

"A promise to buy of another person or company all of some commodity or service that the promisor may thereafter need or require in his business is not an illusory promise; and such a promise is a sufficient consideration for a return promise. It is true that the amount to be delivered or paid for can not be determined at the time the contract is made; but the terms of the promise give a sufficiently definite objective standard to enable a court to determine the amount when the time comes for enforcement. It is not a promise to buy all that the buyer wishes or may thereafter choose to order; the amount is not left to the will of the promisor himself."

Such agreements are sometimes described as "requirements contracts."

Illinois has consistently enforced contracts of this character in *National Furnace Co. v. Keystone Manufacturing Co.*, 110 Ill. 427; *Hall v. Gruesen*, 22 Ill.App.2d 465, 161 N.E.2d 345, and *Armstrong Paint & Varnish Works v. Continental Can Co.*, 301 Ill. 102, 133 N.E. 711.

In *National Furnace*, the contract was for all pig iron needed by plaintiff in the year 1879. Such contract was upheld as against the contention that it lacked mutuality. In *Hall*, the agreement was to manufacture tools needed for a stated "season," and such was upheld against a claim of want of mutuality. In *Armstrong Paint Works*, a contract for the amounts of packages as required for actual use in a designated period of time was held enforceable.

■■ Nor does the want of a stated price for the "necessary electrical service" make the contract unenforceable, for if the price has not been determined the buyer must pay a reasonable price. (*Cook-Master, Inc. v. Nicro Steel Products*, 339 Ill.App. 519, 90 N.E.2d 657.) It is appropriate to consider the analogy to section 2—305 of the Uniform Commercial Code (Ill. Rev. Stat. 1969, ch. 26, par. 2—305) which provides that if

the agreement does not state the price, payment is to be a reasonable price at the time of delivery.

In arguing the want of mutuality, plaintiff cited *Joliet Bottling Co. v. Joliet Citizens' Brewing Co.*, 254 Ill. 215, 98 N.E. 263; *Peru Wheel Co. v. Union Coal Co.*, 295 Ill.App. 276, 14 N.E.2d 998; *Higbie v. Rust*, 211 Ill. 333, 71 N.E. 1010, and *Hodorowicz v. Szulc*, 16 Ill.App.2d 317, 147 N.E.2d 887. These cases contained provisions which were construed as making the contract terminable at will. They were without any provision fixing a term of the contract. In *National Furnace Co. v. Keystone Manufacturing Co.*, 110 Ill. 427, it was stated that there was a clear distinction between what a party might "want" and what was needed or required.

Plaintiff argues that the contract executed by defendant was ultra vires. In *Mound City Warehouse Co. v. Illinois Central R.R. Co.*, 51 Ill. App.2d 103, 200 N.E.2d 919, plaintiff sought to enjoin defendant from leasing its right-of-way to other persons for warehouse purposes. It was held that while the ultra vires act of a corporation may be objected to by the State, by the corporation itself or by the person with whom the alleged ultra vires acts are had, third persons not concerned in the subject matter could not raise such issue. We conclude that such rule controls here. The cases from foreign jurisdictions cited by plaintiff do not appear to contradict such rule.

We have examined the other issues raised and in the light of the record find such to be without merit. The judgment entered on administrative review is reversed.

Reversed.

SMITH, J., and SIMKINS, P. J., concur.