**R.H. DONNELLEY CORP., Plaintiff,**

v.

**ILLINOIS BELL TELEPHONE CO., Defendant.**

**No. 84 C 687.**

United States District Court, N.D. Illinois, E.D.

July 10, 1984.

Byron L. Gregory, Steven H. Hoeft, Bruce H. Weitzman, McDermott, Will & Emery, Chicago, Ill., for plaintiff.

Lee N. Abrams, Mayer, Brown & Platt, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This opinion addresses a claim for preliminary injunctive relief which arose during the pendency of a contract dispute between Illinois Bell Telephone ("IBT") and the Reuben H. Donnelley Corporation ("RHD") (Case No. 83 C 8449). See 595 F.Supp. 1192. The contract dispute centers around IBT's attempts to terminate its long-standing contract with RHD under which the parties jointly produce certain Yellow Page

telephone directories. During the pendency of this contract dispute and in reaction to certain actions by IBT, RHD filed suit against IBT seeking injunctive relief and damages for unfair competition, false advertising, deceptive trade practices, tortious and malicious raiding and copyright infringement. RHD's request for preliminary injunctive relief came on for a hearing before this Court, without a jury, on January 24 and 25, 1984. The Court reviewed the pleadings and heard opening statements by counsel for the parties, the testimony of the witnesses, and the final arguments of counsel, and considered all of the evidence and law presented, including the exhibits received in evidence and the Court's extensive trial notes, as well as researched the law applicable to the case. The Court hereby makes the following findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

### Findings of Fact—Unfair Competition Claim

■ In judging the credibility of each witness and the weight to be given the testimony of each, the Court has taken into account for each witness the intelligence, ability and opportunity to observe, the age, the memory, the manner while testifying, any interest, bias, or prejudice the witness may have, and the reasonableness of the testimony considered in the light of all the evidence in the case.

1. Up to and including 1984 the Yellow Pages have been the products of a joint effort by IBT and RHD under the terms of a long-standing series of contracts. Recently, IBT decided to terminate the latest contract, and both parties have since announced that each will publish its own yellow pages.

2. Since January 15, 1984, defendant has engaged and continues to engage in a newspaper and television advertising campaign which refers to "Illinois Bell Yellow Pages". Although defendant has stated that it will be running only one type of television ad typified by Defendant's Ex. 1,

until March 1, 1984, defendant has not entered into any formal agreement to run only one type ad and has stated that it sees nothing wrong with any ads that have run in the past or will run in the future. Plaintiff finds all of defendant's past and current advertising regarding Yellow Pages objectionable and seeks to enjoin all such advertising.

3. The defendant's television ads presently consist of thirty second commercials depicting people using Yellow Pages, containing the logo "Illinois Bell Yellow Pages" and orally stating, "Look ahead to the Yellow Pages from Illinois Bell."

4. The defendant's newspaper ads display a recognizable picture of various 1984 Yellow Pages including (1984 Chicago Consumer and Business "Red Books" Yellow Pages Directories), the logo "Illinois Bell Yellow Pages," and contain various written messages including:

But one thing will not change at Illinois Bell. That is your Illinois Bell Yellow Pages.

In 1984 and the years ahead, we promise to continue our committment to provide Illinois businesses like yours the opportunity to inform customers....

If you're an advertiser in the 1984 edition of the Illinois Bell Yellow Pages, you can be sure we will be working hard to bring new customers to your door throughout the year. (Def.Ex. 8, 10, 14, 15).

During the past few weeks, the new 1984 Chicago Consumer Yellow Pages directory has been distributed to Illinois Bell subscribers throughout the city. We at Illinois Bell simply want to remind you that the Chicago Consumer Yellow Pages is one of the most valuable books you possess. (Def.Ex. 11 & 12).

5. Prior to the television and newspaper advertising at issue herein, RHD has instigated and supervised all the promotional programs for the Yellow Pages (Tr. 69), with IBT and RHD sharing the cost of promotion (Tr. 110–113). RHD sales persons are instructed to tell potential advertisers that RHD will promote the Yellow

Pages to enhance the value to advertisers. (Tr. 73).

6. Since the defendant's television and newspaper advertising began on January 15, 1984, Yellow Page advertisers have questioned RHD's supervisory personnel on a daily basis as to whether RHD is publishing Yellow Pages in 1984 (Tr. 92–97). Advertisers have indicated confusion as to the source of the 1984 Yellow Pages and the fate of promised promotional activities for the 1984 Yellow Pages by RHD. Sixteen RHD sales representatives have also stated, through affidavits, that, since the inception of the defendant's advertising campaign on January 15, 1984, they have received hundreds of inquiries from advertisers and prospective advertisers expressing their confusion as to who is currently publishing the Yellow Pages in Illinois, IBT or RHD. The sales representatives further state that, before the inception of the IBT advertising campaign, the sales representatives received no inquiries from any customers regarding who, as between IBT and RHD, is publishing the Yellow Pages in Illinois.

7. The IBT advertisements are misleading in that the ads indicate incorrectly that IBT is publishing the current and next Yellow Page directories and will continue to publish the directories in the future. Actually, the current and next Yellow Pages are a joint product of IBT and RHD, with RHD acting as the publisher thereof. After the current contract between the parties is terminated, each will be publishing new directories.

*Findings of Fact—Interference With Business Relationships Claim*

8. Defendant has engaged and continues to engage in newspaper advertising, either directly or through an employment agency, seeking sales persons to staff its Yellow Pages operation. Defendant has stated through the affidavit of David Smith, District Manager of Ameritech Publishing, parent company of IBT, that it will run no other want ad than Plaintiff's Ex. 3 prior to this Court's ruling on IBT's Motion for Summary Judgment in case No. 83 C 8449 (the underlying contract dispute between the parties).

9. Defendant's Ex. 3 states in pertinent part:

We are seeking experienced qualified sales professionals to staff expanded Yellow Pages Sales Operation.

Earlier IBT ads soliciting sales persons stated, in pertinent part:

We are seeking experienced, qualified sales professionals to staff expanded Yellow Pages Sales Operation. (Def.Ex. 9).

The use of the word "expanded" has now been deleted from IBT's want ads. Defendant also represents that it will not solicit any Donnelley employees prior to this Court's ruling on its motion for summary judgment.

10. James Burgess, a sales representative for RHD, was contacted by an unidentified gentleman who stated he was working for a Yellow Page directory media that was opening in Chicago. The unidentified caller knew with relative accuracy Burgess' sales figures and solicited Burgess to work for the company that was opening in Chicago. Burgess was unnerved by the call. (Tr. 127–130).

11. RHD provides its sales people with marketing data developed at great expense to RHD and puts the data in a useable format so that sales people can use and share it with customers. RHD hires sales people just out of college or with only one or two years sales experience and spends $10,000 to $15,000 in training these people in the first year of service and a total of $17,000 to $20,000 in the first two years of service (Tr. 84–85).

12. Information regarding the names and sales performance data of various RHD sales persons has been made available to IBT in the ordinary course of business between the parties. (Aff. of Roger Hughes, Transcript of Hrg., 1/24/84 at 79–80, 116–117).

### Conclusions of Law—Unfair Competition Claim

In reaching its Conclusions of Law, the Court has considered, among others, the constitutional and statutory provisions and decisions hereinafter set forth.

■ In light of the fact that defendant is not legally bound to run only one type of ad and in view of its statement that it sees nothing wrong with any of its ads, this Court finds that plaintiff's request for injunctive relief is not moot. *McNeilab, Inc. v. American Home Products Corp.*, 501 F.Supp. 517 (S.D.N.Y.1980). The defendant is under no binding duty to run any particular type of advertising, and therefore this Court cannot conclude any or all of the objectionable ads will not continue. *Id.*

Under the existing contract, RHD is to publish Yellow Page directories through November 22, 1984, which will include directories to be issued in December, 1984 and January, 1985.

■ The ads which have been run and are currently being run by defendant violate § 43(a) of the Lanham Act under the rationale of *Smith v. Montoro*, 648 F.2d 602 (9th Cir.1981). In *Montoro*, the court found that actor Paul Smith stated an actionable claim under § 43(a) of the Lanham Act where the defendant distributed a film starring Smith after removing Smith's name from the film credits and advertising material, substituting the name of another actor. The court found that § 43(a) was not limited to claims of "passing off" or "palming off" i.e., one party labels its goods or services with a mark identical to that of another enterprise. Instead, the court found that § 43(a) is also violated when a party removes or obliterates the name or trademark on another's product and sells that product under a name chosen by the wrongdoer. *Matushita Electric Corp. of America v. Solar Sound Systems, Inc.*, 381 F.Supp. 64 (S.D.N.Y.1974); *see Truck Equipment Serv. Co. v. Fruehauf Corp.*, 536 F.2d 1210 (8th Cir.1976).

The rationale for extending § 43(a) to such activity is clear: Those who invest time, money and energy into the development of a product and its accompanying goodwill should be allowed to reap the advantages of their investment. In the same vein, in *Or Da Industries, Ltd. v. Leisure Learning Products*, 479 F.Supp. 710 (S.D.N.Y.1979), certain competition between two previously contracting parties was found to have a confusing effect upon the public and thus stated a Lanham Act violation. The defendant had been licensed to sell plaintiff's toy game, "Brainy Blocks". When the relationship ended, defendant began marketing its competing game called "Mr. Brain Builder." Because of the similarity in the names of the toys, the court found a Lanham Act violation.

Under the rationale of *Or Da Industries, Ltd.* and *Montoro*, IBT's failure to mention Donnelley's participation in the publication of current Yellow Page directories constitutes a Lanham Act violation. Although IBT does not currently market a product which competes with the current Yellow Pages, IBT does intend to publish its own Yellow Pages which will be in direct competition with RHD's Yellow Pages. By its newspaper ads, IBT trades off of goodwill partially created by RHD in the parties' joint publication effort. As the court found in *Or Da*, such an attempt to trade off of a prior business partner's goodwill violates the Lanham Act because it appropriates another's goodwill and creates customer confusion. The defendant's newspaper ads portray current Illinois Bell Yellow Pages with no mention of RHD, yet the current Illinois Bell Yellow Pages are the joint product of IBT and RHD. Although the television ad arguably speaks to a future yellow pages product to be produced by IBT, the ad does not sufficiently distinguish the future yellow pages product to be produced only by IBT from the past Yellow Pages which were a joint effort of IBT and RHD. Moreover, the television ad must be viewed in conjunction with the entire ad campaign at issue. *Frisch's Restaurants, Inc. v. Elby's Big Boy*, 514 F.Supp. 704, 710 (S.D.Ohio 1981). When

viewed in the context of the entire ad campaign, the ad is likely to mislead potential customers into believing that IBT has been and is the sole creator of the Yellow Pages, to RHD's injury.

### Plaintiff's Proof

█ The plaintiff has sufficiently proved the likelihood of confusion necessary for granting preliminary injunctive relief. To obtain injunctive relief under § 43(a) Lanham Act, plaintiff need only present proof providing a reasonable basis for the belief that the plaintiff is likely to be damaged as a result of the false advertising. *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186 (2d Cir.1980). To place a higher burden on the plaintiff would be error. *Id.* A showing of a likelihood of confusion alone will support a grant of injunctive relief. *Schutt Manufacturing Co. v. Riddell, Inc.*, 673 F.2d 202 (7th Cir.1982); *McNeilab Inc. v. American Home Products Corp.*, 501 F.Supp. 517, 528 (S.D.N.Y. 1980).

In the instant case, the evidence plaintiff presented to the Court, together with reasonable inferences to be drawn therefrom, is sufficient to show a likelihood of confusion to support a grant of injunctive relief. Plaintiff demonstrated that it promised promotional activities to customers when its sales representatives solicited such customers for the Yellow Pages. In view of this fact, it is reasonable to infer that RHD's customers anticipated advertising of the Yellow Pages by RHD. Naturally, such customers became confused by the advertising campaign for the Yellow Pages, mentioning IBT only and not RHD.

### Standards for Injunctive Relief

In *Fox Valley Harvestore, Inc. v. A.O. Smith Harvestore Products, Inc.*, 545 F.2d 1096, 1097 (7th Cir.1976), the court set forth the standards that must be satisfied prior to the issuance of a preliminary injunction. The plaintiff must establish that: (1) it has a reasonable likelihood of success on the merits; (2) it has no adequate remedy at law and will be irreparably harmed in the absence of injunctive relief; (3) the threatened injury to plaintiff outweighs the harm the injunction may inflict on the defendant; and (4) the grant of injunctive relief will not disserve the public interest. Applying these standards to the facts of the instant case, this Court finds that the standards have been satisfied.

As previously noted, RHD has established the likelihood of confusion resulting from the IBT advertising at issue. Since the likelihood of confusion is the ultimate inquiry in a suit under § 43(a) of the Lanham Act, the defendant has demonstrated that it has a substantial likelihood of success on the merits, satisfying the first criteria of *Fox Valley Harvestore*. In addition, the law is well-settled that likelihood of confusion will generally constitute irreparable harm. *Schutt Manufacturing Co. v. Riddell, Inc.*, 673 F.2d 202 (7th Cir.1982). Since plaintiff has met this burden, the second criteria of *Fox Valley Harvestore* is satisfied. Balancing the hardships, as required by the third criteria, this court finds that the harm to RHD if an injunction is not issued, strongly outweighs any harm an injunction may impose on IBT. Although the relief fashioned by this order for injunctive relief does place some burden on IBT, the burden is small when compared to the harm Donnelley may suffer by the confusion to customers and usurpation of its goodwill. Moreover, the injunctive relief issued herein furthers the goals of free and fair competition embodied in the Lanham Act. Such relief serves rather than harms the public interest.

### Conclusions of Law—Interference with Business Relationships Claim

Initially, this Court finds that IBT's affirmations have not sufficiently mooted Donnelley's claim for injunctive relief against interference in plaintiff's business relationships. IBT has stated, by affidavit, through its attorney in open court and in its briefs, that IBT (and Ameritech Publishing, Inc., its affiliate) will not solicit any Donnelley employees until the court decides IBT's motion for summary judgment

or hire any Donnelley employee (even if they were not solicited by IBT) prior to March 1, 1984. Since March 1, 1984 has passed and the companion opinion to this case, No. 83 C 8449, effectively decides IBT's motion for summary judgment, this Court must conclude that there is a reasonable expectation that the offending conduct will resume. In such circumstances, the plaintiff's request for injunctive relief cannot be dismissed as moot. *E.g., McNeilab, Inc. v. American Home Products Corp.,* 501 F.Supp. 517 (S.D.N.Y.1980); *Beech Cinema v. Twentieth Century Fox Film Corp.,* 480 F.Supp. 1195, 1198–99 (S.D.N.Y. 1979). In this Court's view, plaintiff has sufficiently demonstrated that IBT, and/or its agents, have directly contacted RHD sales people and in so doing have utilized information obtained in the course of its relationship with RHD. The testimony presented at the hearing and the affidavits of Donnelley sales people make it reasonable to infer that IBT and/or its agents directly solicited RHD sales people to work for IBT.

█ Applying Illinois law to the above-outlined facts, this Court finds that plaintiff has stated a claim for interference with business relationships sufficient to warrant the granting of injunctive relief. In order to state a claim for interference with business relationships in Illinois, some degree of malice must be present. For example, the lodestar case in Illinois on the issue, *Doremus v. Hennessy,* 176 Ill. 608, 54 N.E. 524 (1898), found a valid claim for interference with a business relationship where defendants had been guilty of threatening persons plaintiffs had contracts with. The court noted that harming a plaintiff's customer or preventing others from working for plaintiff or causing them to leave plaintiff's employ by fraud, misrepresentation or physical or moral intimidation or persuasion, with an intent to inflict an injury which causes loss, would be actionable. *Id.* at 614, 54 N.E. 524. Similarly, a malicious scheme to injure was present in *Cook-Master, Inc. v. Nicro-Steel Products, Inc.,* 90 N.E.2d 657, 339 Ill.App. 519 (1950). The defendant agreed to manufacture specialty cookware for the plaintiff. The plaintiff made a substantial investment, built a sales force, advertised the product and took orders and deposits from customers. The defendants then formed a new company which competed with plaintiff, refused to deliver the specially-manufactured cookware as agreed, and attempted to hire away the plaintiff's sales force. Relying upon *Doremus v. Hennessy,* the court found that evidence of malice was sufficient and that plaintiff had stated a valid claim for malicious interference with its contractual relations.

On the other hand, in cases where evidence of malice is lacking, Illinois courts have generally refused to find that an action for interference with business relationships exists. For instance, in *Ancraft Products v. Universal Oil Products,* 84 Ill.App.3d 836, 40 Ill.Dec. 70, 405 N.E.2d 1162 (1980), the defendant hired key employees of plaintiff. Prior to the hiring, defendant and plaintiff had engaged in extensive business dealings, with plaintiff manufacturing special equipment for defendant. The court found that in the absence of an express employment contract and without evidence of malice, the principles of free competition prevented liability to a subsequent employer.

█ Against this background, this Court finds that IBT's conduct is sufficiently malicious to warrant the granting of preliminary injunctive relief. The parties have been contractually bound for many years to jointly produce Yellow Page directories. As publisher under the continuing contract, RHD has recruited and trained a sales force and developed marketing data to assist that sales force. IBT's decision to sever that contractual relationship and compete with its former business partner, does not, however, give IBT the right to interfere with RHD's employment relationship with its sales force while their contractual relationship continues to exist. Such a result is grossly unfair in light of the fact that RHD hired and developed that sales force to carry out the joint contractual

undertaking of the parties. Under this Court's interpretation of the governing contract (see case No. 83 C 8449), IBT will be free to solicit RHD employees after November 22, 1984, the effective termination date of the parties' contractual relationship. Until that date, however, IBT should not be able to solicit RHD employees for a future competing endeavor. Such action would be similar to the action which the court condemned in *Cook-Master*. It would, in essence, allow IBT to impose its interpretation of the contract upon RHD, an interpretation which this Court has deemed to be in error. (See Case No. 83 C 8449). Since this Court has concluded that the parties' joint contractual undertaking is in effect until November 22, 1984, IBT will not be able to directly solicit RHD employees until after that date. On November 22, 1984 RHD and IBT will become competitors and IBT will then no longer be so limited in its lawful efforts to obtain employees. *See Candalaus Chicago v. Evans Mill Supply Co.*, 51 Ill.App.3d 38, 9 Ill.Dec. 62, 366 N.E.2d 319 (1977).

As previously noted, IBT's attempts to persuade RHD employees to come over to IBT Yellow Pages while IBT and RHD are still partners in the same venture states a sufficient claim for interference with business relationships. Thus, plaintiff has demonstrated a reasonable likelihood of success on the merits sufficient to satisfy the first requirement of *Fox Valley Harvestore*. In addition, this court finds that plaintiffs will be irreparably harmed in the absence of injunctive relief. RHD cannot easily replace or measure the value of a well-trained sales staff. This potential loss easily outweighs any delay or inconvenience IBT may suffer in having to develop a sales staff "from scratch." Finally, the public interest will not be disserved by preserving the status quo between the parties while their contractual undertakings are being completed.

Accordingly, based on the foregoing findings of fact and conclusions of law, plaintiff's motion for a preliminary injunction is hereby granted in part in order to preserve the status quo. Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, it is hereby ordered that:

### 1. *Unfair Competition Claim*

IBT shall not advertise the Yellow Pages or Yellow Page directories published in 1984 without stating or showing that such directories are published by R.H. Donnelley Corporation. Yellow Page ads for directories which are published after 1984 shall state that they are new Yellow Page directories of Illinois Bell (or Ameritech) only.

### 2. *Interference with Business Relationships Claim*

IBT shall not directly contact any R.H. Donnelley employees or advertise directly for R.H. Donnelley employees as long as the contracts entitled the "Publishing Agreement" and "Publishing Agreement Street Address Directories" are in effect, which this Court has determined to be until November 22, 1984. IBT may, however, advertise generally for sales people for employees for its new directory publishing organization.