406

(No. 40794.—

ILLINOIS POWER COMPANY, Appellant, *vs.* ILLINOIS COMMERCE COMMISSION *et al.,* Appellees.

*Opinion filed March 28, 1968.*

SCHIFF, HARDIN, WAITE, DORSCHEL & BRITTON, of Chicago, (GEORGE B. PLETSCH, WILLIAM T. HART, and WILLIAM S. McDOWELL, JR., of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, SAM S. PESSIN, of Belleville, (EDWARD G. FINNEGAN, Special Assistant Attorney General, of counsel,) for appellees.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

In proceedings under the Electric Supplier Act (Ill. Rev. Stat. 1965, chap. 111⅔, par. 401 *et seq.*) the Illinois Commerce Commission authorized Monroe County Electric Cooperative, Inc., to supply electric service to the Country-aire Estates Subdivision. The decision was affirmed by the circuit court of Macon County, and the Illinois Power Company, a competing supplier, seeks further review by direct appeal.

The subdivision, containing 18 lots, is situated in an unincorporated area of Monroe County. At the time of the hearings no construction had begun on any of the lots. On August 2, 1965, Illinois Power and Monroe Cooperative each sent to the other a written notice of intent to extend electric service into the subdivision, and each thereafter filed complaint with the Commission objecting to the proposed service by the other. The proceedings were consolidated.

The evidence shows that Monroe, which has maintained an electric line adjacent to the disputed area since 1945, has distribution facilities 275 feet to the northeast, and that the closest facility of Illinois Power is a transformer located about 304 feet to the southwest. Illinois Power has maintained an electric line in the immediate vicinity of the disputed area since 1926. In August, 1964, the developers contacted Illinois Power regarding electric service for the subdivision but in November, 1965, that request was withdrawn and a request was made instead for underground electric service from Monroe. The Commission found, *inter alia,* that the cost of providing service by either supplier depends upon which is closest to the point of service, that Monroe is closest to the subdivision and can supply electric service to it with a smaller amount of additional investment, that it has an adequate existing line in proximity to the premises to be served, and that the

customer (the owner-developer) prefers the subdivision to be served by Monroe.

The Electric Supplier Act, passed in 1965, contemplates the making of service area agreements between suppliers, subject to Commission approval. It then provides that, in the absence of agreement, written notice of any proposed new lines or extension of existing ones must be given to an electric supplier adversely affected. Complaint may be filed with the Commission by a supplier which claims it should be permitted to serve any customer or premises which could be served by the proposed extension. In determining which supplier is entitled to furnish the proposed service the Commission "shall give substantial weight to the consideration as to which supplier had existing lines in proximity to the premises proposed to be served, provided such lines are adequate. In addition, the Commission may consider, but with lesser weight, (a) the customer's preference as to which supplier should furnish the proposed service, (b) which supplier was first furnishing service in the area, (c) the extent to which each supplier assisted in creating the demand for the proposed service, and (d) which supplier can furnish the proposed service with the smaller amount of additional investment." Ill. Rev. Stat. 1965, chap. 111⅔, par. 408.

To reverse the decision Illinois Power argues that there was no existing application for service and that the notice by Monroe was therefore premature. The statutory procedure applies to the extension of lines "for the purpose of furnishing service to a customer or premises." We cannot accept the tortured argument that the owner is not a customer because the premises are not already being served with electricity. The subdivision is shown to be premises at which a demand for service exists, and the proposed extension is for the purpose of furnishing that service. The notice was not premature.

It is also claimed that the Commission erred in treating

the entire subdivision as a unit, that some of the lots are closer to Illinois Power's existing line than they are to Monroe's and that the subdivision should have been divided between the two suppliers. We cannot agree. The term "premises" is defined in section 3.12 of the Act as a physical area which constitutes a single parcel or unit and "which a single customer owns, uses or in which it has some other interest in connection with receiving service at one or more points of delivery." (Ill. Rev. Stat. 1965, chap. 111⅔, par. 403.12.) The subdivision in question satisfies the definition, and the Act when read as a whole discloses no intent that in cases of a compact subdivision the determination of proximity to existing lines must nevertheless be made on a lot-by-lot basis.

A further contention is made that the subdivider was not shown to be a "customer" for electric service, as that term is used in the Act, and its preference for a supplier should therefore not have been considered by the Commission. As we have indicated, it sufficiently appears that the owner of the subdivision qualifies as a customer within the meaning of the Act, and the Commission properly referred to it as such.

The final contention is that the Commission improperly considered, as having some weight in reaching its decision the fact that a multiplicity of proceedings would be avoided. The order found it to be in the public interest that the right to serve the subdivision be determined in the present proceeding, so that the suppliers may be informed of their rights and the owners may proceed with improvements "without being required to engage in a multiplicity of administrative proceedings." Illinois Power complains of this on the ground that the Act does not mention the avoidance of multiple administrative proceedings as a factor in determining a territory dispute. We fail to see any impropriety in the finding. The factors to which the statute says weight may be given are not made exclusive ones, and it is

expressly provided that "the Commission shall act in the public interest." Provisions such as those involved here should be given a reasonable, common-sense construction. The circuit court in affirming the decision of the Commission properly found that the avoidance of multiplicity of proceedings is relevant to the public interest.

It is not disputed that Monroe is in closer proximity to the subdivision as a unit. And the Commission expressly found it "has adequate existing line in proximity to the premises to be served; the customer, the Trust, prefers that the subdivision be served by Monroe; that Monroe can furnish the proposed service with the smaller amount of invested capital and that Illinois Power was first furnishing service in the general area." The circuit court properly concluded that the decision is supported by sufficient evidence, and no error has been shown in the judgment.

The brief on behalf of appellees makes no attempt to meet or answer most of the grounds for reversal urged by Illinois Power Company. The only contention appellees have tried to refute is the one objecting to the treatment of the entire subdivision as a unit, and even here no authorities are cited. As to the rest we agree with appellant that its conclusions in its original brief stand uncontroverted. However after careful consideration of each we find none with sufficient merit to require reversal.

The judgment of the circuit court of Macon County is affirmed.

*Judgment affirmed.*